Michael RIFKIN, Individually and as Custodian for Alison Kim Rifkin, Plaintiff-Appellant,

v.

Trammell CROW, Richard B. Dawkins, Reid W. Dennis, Jerome C. Eppler, Herman L. Philipson, Jr., Howard J. Runnion, Jr., Israel Sheinberg, Merle J. Volding, W. D. Kramp, Recognition Equipment Incorporated, Corporation S and Price Waterhouse & Co., Defendants-Appellees.

No. 75–4030.

United States Court of Appeals, Fifth Circuit.

June 2, 1978.

Jared Specthrie, Melvyn I. Weiss, David J. Bershad, Paul L. Tullman, Sharon Levine Mirsky, New York City, Dean Carlton, Dallas, Tex., for plaintiff-appellant.

Thomas A. Loose, Recognition Equip. Inc., Irving, Tex., Morriss Harrell, Lyman G. Hughes, Dallas, Tex., for Crow, et al.

Don Case, Jack Pew, Jr., Dallas, Tex., Peter E. Calamari, John R. Hupper, John L. O'Donnell, James E. Tolan, New York City, for Price Waterhouse.

Linda S. Aland, Roger J. Allen, Ira F. Levy, Dallas, Tex., for Corp. S.

Before GEWIN, RONEY and HILL, Circuit Judges.

RONEY, Circuit Judge:

In this Rule 10b–5 securities case, plaintiff appeals from the district court's grant of summary judgment for defendants. The court's decision was based on a lack of "some element of general reliance by plaintiff" on the reports released by defendants. In his deposition testimony which was before the district court, plaintiff specifically averred that he relied on the reports dis-

seminated by defendants, which were allegedly misleading in their treatment of sales to a subsidiary and of research and development expenses. Holding that the district court erroneously concluded that there was no issue of fact as to reliance, and that it misapplied our case of *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), which turned on a finding of lack of any reliance on a broker's advice, we reverse.

## I. *Facts*

Plaintiff Michael Rifkin brought this class action suit pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. Named as defendants were Recognition Equipment, Inc.; nine of its officers and directors; its affiliate, Corporation S; and its accountants, Price Waterhouse & Co. Plaintiff sought to recover damages suffered by himself and all persons who purchased Recognition common stock on the open market between October 31, 1969 and July 1, 1971 at prices allegedly inflated by misleading financial and other statements disseminated by Recognition, some of which were certified by defendant Price Waterhouse. Plaintiff alleges that Recognition was able to show a profit in 1969 only by improperly capitalizing millions of dollars worth of research and development expenses, and by not consolidating Recognition's financial statements with those of its 49%-owned affiliate, Corporation S, to which Recognition made substantial sales.

Recognition was organized in 1962 to design and manufacture optical scanning character recognition systems. Such devices "translate" written English into "machine language" for utilization by a computer. During its early years, Recognition suffered substantial losses. In 1965, Recognition's president, defendant Philipson, promised its shareholders that the company would be profitable by 1969. Despite losses for the years 1962 through 1968, on January 28, 1969 Philipson repeated his prediction that Recognition would show a profit for its fiscal year ending October 31, 1969.

Recognition's 1969 Annual Report showed the promised profits. Plaintiff contends that Recognition was able to achieve this only by making two principal misstatements and omissions in the financial reports.

First, the company capitalized several million dollars of research and development costs. This fact was revealed in Note 5 to the financial statement. Plaintiff alleges that defendants knew this research and development would not be recoverable from later years' operations. Therefore, plaintiff contends, it should not have been capitalized and carried as an asset, but instead should have been written off in 1969. In 1970, Recognition decided to expense research and development costs as incurred, and to write off the prior (1969) unamortized research and development as an extraordinary item.

Second, Recognition reported profits on sales of equipment to its affiliate, Corporation S. Recognition had formed Corporation S in 1967. Corporation S was a "service" company, which provided data processing services to subscribers, using Recognition's optical character recognition equipment. In 1969, Recognition reduced its ownership of Corporation S to 49%. As a result, Corporation S was no longer a majority-owned subsidiary, and Recognition did not consolidate the financial results of the two companies in its 1969 financial statements as it had in the past. Recognition pointed this out in Note 2 to the financial statement in its 1969 Annual Report.

Recognition's sales for 1969 included sales of $12,000,000 of equipment to Corporation S. This represented 45% of Recognition's total sales for that year of $27,000,000. Plaintiff asserts that generally accepted accounting principles required Recognition to consolidate Corporation S's results with its own, thus eliminating the intercompany sales and profits.

## II. *Issues of Fact*

### A. *As to Reliance*

■ The district court erred in holding that there was no genuine issue of fact

regarding the lack of "some element of general reliance by plaintiff." Even if "some element of general reliance" were required, a legal issue discussed in Section III, *infra*, of this opinion, plaintiff offered sufficient evidence to create an issue of fact in that regard, so that the case could not be decided by summary judgment on that issue.

In his deposition, Rifkin specifically stated that he relied on the 1969 Annual Report and other statements emanating directly and indirectly from Recognition in making his seven purchases of Recognition stock in the period in question. He summarized his detailed deposition testimony about his reliance by saying that:

> I read every document I received from the Company, and to the extent I read it, I relied on it.

In making his first purchase, of 50 shares, on December 19, 1969, Rifkin relied on an account of a speech by Recognition's president Philipson, in which Philipson reported that Recognition "had achieved a long awaited turnaround for the year ended 1969, a turnaround in earnings, resulting from sharply increasing sales." He also "took into account" information in trade journals (such as Moody's, Electronic News, and Standard & Poor), and an Arthur D. Little study about the potential for optical recognition equipment. In making his purchase, he relied upon the "fact that REI [Recognition] became profitable for the first time; that . . . after years of investment and heavy losses, they . . . alone in the industry were suddenly profitable [and] the turnaround was pretty good."

Plaintiff's second purchase, also of 50 shares, was on January 15, 1970. In addition to the material he had relied on in making his first purchase, he relied on an article in Business Week, more complete reports of Philipson's speech, and possibly Recognition's 1969 Annual Report, if he had received it by then.

On February 4, 1970, plaintiff purchased another 50 shares. By this purchase at the latest, he received and relied on the company's 1968 and 1969 Annual Reports. He

also read a complete transcript of Philipson's speech, which appeared in the Wall Street Transcript issue of January 19, and a "welcome" letter from Recognition.

Plaintiff made his fourth purchase, of 100 shares, on September 10, 1970. He relied on a Barron's article, Recognition's semi-annual report to shareholders, a Recognition press release reporting that it had received a $7,000,000 contract from the United States Post Office, a series of Investors News Reports which Recognition sent its stockholders, and a Wall Street Transcript of another speech by Philipson.

Plaintiff's next purchase, of 50 shares, occurred on October 20, 1970. In making this purchase, he relied upon all the information he had previously relied upon.

On January 4, 1971, plaintiff made his sixth purchase, of 100 shares of Recognition stock. In making this purchase, he considered a Wall Street Journal article reporting that Recognition would have reported a profit for the year ending 1970, but because of an accounting change and extraordinary items, Recognition was going to have a loss of almost $11,000,000 for the year.

Rifkin made his seventh and last purchase on February 12, 1971. He stated that if he received the 1970 Annual Report dated January 4 before making this purchase, he read and relied on it. He also relied on an article by Robert Metz in the New York Times, which showed that Recognition's "stock was priced low as compared to prior periods." Rifkin also noted that before all of his purchases he relied on the interim reports (quarterly and semi-annual) he received from the company. By "reliance," Rifkin said he meant that he saw and read the material and it was a factor in his determination to buy the Recognition stock.

In addition to the specific documents referred to above, Rifkin stated that in making his purchases he relied on the fact that the market price of a stock reflects the company's financial statements and its inherent value:

> If the price of the stock reflects, and I believe it does, if the price of a stock

reflects the financial statements which are circulated to the investment community and if the financial statements are over-stated, inflated, it would be reasonable to believe that the price of the stock was over-stated. I think that a buyer of a security has a right to rely on the fact that the stock value bears some reasonable relationship to the financial statements circulated in the investment market. . . . [Investors] are entitled to rely on the fairness of a price set by the general investment community and that that price has been established as bearing a reasonable relationship to the earnings and balance sheets and if the earnings and balance sheets are over-stated, why their reliance and expectation of paying a fair price is just not borne out.

Thus, plaintiff's testimony, if accepted by a trier of fact, would support recovery under even the most restricted reliance requirement.

### B. *As to Generally Accepted Accounting Principles*

Plaintiff alleges that the Recognition financial statements were not prepared in accordance with generally accepted accounting principles and did not fairly present the true financial position of the company.

Defendants submitted several affidavits from experts which flatly concluded that Recognition's financial statements were prepared in accordance with generally accepted accounting principles, but plaintiff's affidavits from his accounting expert detailed a contrary opinion.

Defendants argue that an analysis of the affidavits reveals no genuine issue as to the propriety of the accounting methods employed in the financial statements. They argue that the statements, when read with the accompanying notes, reveal all that is required by generally accepted accounting principles, and that the consolidation touted by plaintiff and his expert would actually have been contrary to the law and generally accepted accounting principles in effect at that time.

The analysis of these arguments, however, is an exercise initially for the district court. The district court's decision, granting summary judgment to defendants based on the reliance issue, made no mention as to whether the district court considered there to be a genuine issue of a material fact as to the fair presentation and disclosure of the financial condition of the company. On remand, the district court is free to consider the propriety of summary judgment on any ground it has not previously ruled upon.

### III. *Simon v. Merrill Lynch and Rule 10b–5's Reliance Requirement*

While we do not know for certain how the facts will develop on further proceedings, we have concluded that, in light of the parties' contentions, it is highly unlikely that *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), will be a controlling or dispositive precedent as to the law in this case. That decision held a 10b–5 cause of action foreclosed because there was no "general reliance" on the stockbroker's alleged misrepresentations. Further analysis here may be helpful to the district court on remand to put *Simon* in proper context, *vis-a-vis* this case and the law of reliance as it has developed in the other circuits.

Simon brought his 10b–5 action against Merrill Lynch, alleging he had purchased common stock in a computer corporation because of misrepresentations and omissions made by Merrill Lynch. After a bench *trial*, the district court concluded that Simon had failed to prove his case against Merrill Lynch. Simon appealed, and we affirmed. Our disposition was clearly based on the fact that the district judge, as trier of fact, found that Simon *had not relied* on any Merrill Lynch representations. We stated:

The [trial] Court specifically found that Simon *"did not rely* on [Merrill Lynch's representations] regarding these securities."

482 F.2d at 883 (emphasis added). Simon did not convince us that this finding of fact was clearly erroneous.

■ Simon argued that the trial court's finding of nonreliance was "not dispositive," because Simon read *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), as holding that reliance need not be proved in nondisclosure cases. We rejected Simon's argument on the basis of the facts before us, that is, that the district judge had found that Simon was not relying on any information from Merrill Lynch in making his purchases:

> We think the finding that plaintiff did not generally rely upon the broker for advice makes the principle asserted by Simon inapplicable here. Although *Ute* does state that a plaintiff need not specifically demonstrate reliance on particular omissions, that case did not involve, as here, a general *lack of reliance by the plaintiffs* on the defendants' representations. In *Ute*, concerning the management and distribution of the Indian tribe's assets, the Court acknowledged that the plaintiffs "considered these defendants to be familiar with the market for the shares of stock and relied upon them when they desired to sell their shares." 406 U.S. at 152, 92 S.Ct. at 1471. The Court made clear that "if [defendants] had functioned merely as a transfer agent, there would have been no duty of disclosure here." 406 U.S. at 152, 92 S.Ct. at 1471.

This reasoning is apparent in this Circuit's holdings that some element of general reliance by plaintiff, even in nondisclosure cases, is essential to a Rule 10b–5 action. . . .

In the case at bar, the District Court found no evidence "that plaintiff followed [Merrill Lynch's] advice to his detriment," indicating that, unlike those who relied on the defendants in *Ute, Simon made his own investment decisions and relied in no way on defendant's recommendations.* The circuit's requirement of reasonable reliance, therefore, was not met.

482 F.2d at 884–885 (emphasis added). Thus, since nothing said by the broker was a factor in causing Simon to purchase his stock, nothing omitted by the broker could be a factor either. *Simon*, then, was a fact case, which merely applied the simple rule that before a defendant can be charged with a plaintiff's losses, defendant had to have played some part in *causing* those losses.[1] Since *Simon* was based on a find-

---

1. Dicta in our recent opinion of *Moody v. Bache & Co.*, 570 F.2d 523 (5th Cir. 1978), suggested that this is the correct interpretation of *Simon*. The Court there observed that Simon's recovery had been precluded by a specific finding of nonreliance:

 > [E]ven in nondisclosure cases, where *a causal link between violation and harm* is always most difficult to prove, *a specific finding of nonreliance may suffice to overcome the materiality of the omission*. *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973).

 570 F.2d at 528, (emphasis added).

 This "causal link" is related to a defendant's duty of disclosing information to plaintiff. In *Ute*, for example, the Supreme Court made it clear that the presumption of reliance was raised because of the "circumstances of the case." 406 U.S. at 153, 92 S.Ct. 1456. Those "circumstances" included the fact that plaintiffs "considered these defendants to be familiar with the market for the shares of stock and *relied upon them when they desired to sell their shares.*" *Id.* at 152, 92 S.Ct. at 1471 (emphasis added). The Supreme Court noted that if defendants "had functioned merely as a transfer agent, there would have been *no duty* of disclosure here." *Id.* (emphasis added).

 In *Simon*, we quoted these two passages from *Ute*, and concluded that our requirement of "some element of general reliance by plaintiff, even in nondisclosure cases" is based on "[t]his reasoning" in *Ute*. Thus, it is clear that *Simon's* "general reliance" requirement means that in a general way, plaintiff must have made his purchase relying on defendant's duty to disclose material information to plaintiff. *See Vohs v. Dickson*, 495 F.2d 607, 622 (5th Cir. 1974) (the *Ute* presumption of reliance is confined by *Simon* "to making proof of *specific* reliance on particular omissions unnecessary when the circumstances indicate that the plaintiff placed some *general* reliance upon the defendant's disclosing material information.") (emphasis in original); *Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 668 (N.D.Ga.1975) ("Both *Simon* and *Vohs* indicate that proof of reliance upon the facts misrepresented, or not disclosed, will be presumed in a

ing of fact, no burden of proof issues were involved, and the articulation of the *Ute* presumption of reliance was inapplicable.

In *Ute*, a bank purchased stock from a group of unsophisticated investors without disclosing that the stock was selling at a higher price on a secondary market made by the bank. The Court of Appeals for the Tenth Circuit denied recovery because the record failed to disclose evidence that the plaintiffs relied on any misstatements made by the bank. The Supreme Court reversed, holding that

> [u]nder the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.

406 U.S. at 153–154, 92 S.Ct. at 1472. Thus, *Ute* simply did not address the *Simon* situation where there was positive proof that the

plaintiff did not rely on anything defendant did.

After *Ute*, the reliance requirement has varied somewhat in articulation from circuit to circuit, but a general pattern seems to have emerged: where a 10b–5 action alleges defendant made positive misrepresentations of material information, proof of reliance by the plaintiff upon the misrepresentation is required. Upon an absence of proof on the issue, plaintiff loses. On the other hand, where a plaintiff alleges deception by defendant's nondisclosure of material information, the *Ute* presumption obviates the need for plaintiff to prove actual reliance on the omitted information.[2] Upon a failure of proof on the issue, defendant loses. But this presumption of reliance in nondisclosure cases is not conclusive. If defendant can prove that plaintiff did not rely, that is, that plaintiff's decision would not have been affected even if defendant had disclosed the omitted facts, then plaintiff's recovery is barred.[3] *Simon*, therefore,

specific transaction only when the injured party relied upon the charged party in making its investment decisions."). *Cf.* Note, *The Reliance Requirement in Private Actions Under SEC Rule 10b–5*, 88 Harv.L.Rev. 584, 605–606 n.93 (1975). In other words, *Simon's* "general reliance" language simply requires there to be a causal link between defendant's violation and plaintiff's harm in order for plaintiff to recover. *See also Moody v. Bache & Co., supra.*

The duty-general reliance-causal link concept tends to distinguish suits against a stockbroker, as in *Simon*, where the broker's duty varies with the plaintiff's status, from suits against a publicly held company, which indisputably has a duty to make its financial statements fairly reflect its own condition. *See also* the discussion of the "fraud on the market" theory, *infra.*

2. *E. g., Holdsworth v. Strong*, 545 F.2d 687, 695 (10th Cir. 1976), cert. denied, 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977); *Chelsea Associates v. Rapanos*, 527 F.2d 1266, 1271 (6th Cir. 1975); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380–381 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *McLean v. Alexander*, 420 F.Supp. 1057, 1076 (D.Del.1976); *Harriman v. E.I. DuPont de Nemours & Co.*, 411 F.Supp. 133, 165–166 (D.Del.1975); *Lorber v. Beebe*, 407 F.Supp. 279, 288–289 (S.D.N.Y.1975). *See also Forrestal Village, Inc. v. Graham*, 551 F.2d 411, 414 (D.C.Cir. 1977); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 540 F.2d 27,

33 (2d Cir. 1976); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Thomas v. Duralite Co.*, 524 F.2d 577, 585 (3d Cir. 1975). *See generally* Stoll, *Reliance as an Element in 10b–5 Actions*, 53 Ore.L.Rev. 169 (1974); Note, *The Reliance Requirement in Private Actions Under SEC Rule 10b–5*, 88 Harv. L.Rev. 584 (1975).

3. *Rochez Bros. v. Rhoades*, 491 F.2d 402, 410 (3d Cir. 1974):

> If defendant is able to demonstrate that there was clearly no reliance, that is, that even if the material facts had been disclosed, plaintiff's decision as to the transaction would not have been different from what it was, then the non-disclosure cannot be said to have caused the subsequent loss and under the principles of the law of fraud, recovery should be denied. . . . However, in light of the Supreme Court's holding in *Affiliated Ute*, the burden of proof rests squarely upon defendant to establish the "non-reliance" of plaintiff.

*Accord, Chelsea Associates v. Rapanos*, 527 F.2d 1266, 1271–1272 (6th Cir. 1975); *Thomas v. Duralite Co.*, 524 F.2d 577, 585 (3d Cir.1975); *Carras v. Burns*, 516 F.2d 251, 257 (4th Cir. 1975); *Harriman v. E. I. DuPont de Nemours & Co.*, 411 F.Supp. 133, 165 (D.Del.1975); *Lorber v. Beebe*, 407 F.Supp. 279, 288–289 (S.D.N.Y. 1975).

employs a reliance standard no different from that generally applied in other federal courts.

 The above analysis tends to demonstrate that *Simon* may well be inapplicable to this case. On remand, when the facts are fully developed, it will first be necessary for the district court to "characterize" the case, as a "misrepresentation" or an "omission" case. If the court determines that this is a misrepresentation case, then the more stringent reliance requirement would apply, and Rifkin would need to prove that he relied on defendants' misrepresentations. If, on the other hand, the district court determines that this is an omission case, Rifkin would be entitled to the *Ute* presumption of reliance, and without more, he could prevail on the reliance issue unless, as in *Simon*, defendants prove that plaintiff did not rely. Since the alleged misstatements were in the official financial statements of the company itself, defendants may be hard pressed to demonstrate that these statements played no part in the investment decisions of an investor such as Rifkin.

*Simon* would also be inapplicable should the facts so develop as to present a "fraud on the market" theory of action. Rifkin testified that he relied on the market to properly reflect in market value the financial condition of a company as accurately set forth in the company's statements. The inaccuracies and omissions of the statements caused a distortion in the market which Rifkin claims misled him as to the fair market value of the stock. In further support of his claim, Rifkin submitted an affidavit from a securities expert, who concluded that the alleged misstatements "had

a material inflationary impact on the price at which Recognition stock traded during the period" in question.

In cases involving similar "fraud on the market" claims, the Second and Ninth Circuits have held that a plaintiff need not show individual reliance upon the particular misrepresentations or omissions made by a defendant.[4] The rationale for extending the *Ute* presumption of reliance to such cases was explained in *Blackie v. Barrack*:

> A purchaser on the stock exchanges . . relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations. Requiring direct proof from each purchaser that he relied on a particular representation when purchasing would defeat recovery by those whose reliance was indirect, despite the fact that the causational chain is broken only if the purchaser would have purchased the stock even had he known of the misrepresentation.

524 F.2d 891, 907 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). A defendant can rebut this presumption of reliance in two ways: by proving that an insufficient number of traders relied to inflate the stock's price, or by proving that the plaintiff purchased despite knowledge of the misrepresentation or omission or that he would have purchased had he known of it. 524 F.2d at 906.

This Circuit has not yet decided whether reliance should be presumed in "fraud on the market" situations.[5] Without full de-

---

**4.** *Blackie v. Barrack*, 524 F.2d 891, 906–907 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *In re Scientific Control Corp. Securities Litigation*, 71 F.R.D. 491, 503–504 (S.D.N.Y.1976); *In re United States Financial Securities Litigation*, 69 F.R.D. 24, 43 (S.D. Cal.1975); *Tucker v. Arthur Anderson & Co.*, 67 F.R.D. 468, 480 (S.D.N.Y.1975); *Werfel v. Kramarsky*, 61 F.R.D. 674, 681 (S.D.N.Y.1974).

*See also Kesler v. Hynes & Howes Real Estate, Inc.*, 66 F.R.D. 43, 49 (S.D.Iowa 1975).

**5.** *Cf. Sargent v. Genesco*, 75 F.R.D. 79, 84–85 (M.D.Fla.1977). In that case, the district court discussed the "fraud on the market" theory. It did not find it necessary to determine the theory's acceptability in order to decide the issue (class certification) before it, but it noted that it was "inclined to believe that such a theory is consistent with the remedial purpose of the Securities Act of 1933 and Rule 10b–5 . . .." *Id.* at 85.

velopment of the facts, we need not now decide whether such a theory will be recognized in this Circuit.

### IV. *Conclusion*

The district court erred in granting defendants' motions for summary judgment for lack of "general reliance by plaintiff," both as to the issues of fact involved and in its application of *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* to the facts before it. We therefore reverse and remand to the district court. Since the district court denied class certification with a citation to *Simon,* we vacate that order to allow the district court to reconsider that order in light of this opinion. We affirm, however, that part of the district court's order dismissing the case against defendant Richard Dawkins for want of prosecution, since even at this date Dawkins has never been served with process in this action.

We wish to emphasize that summary judgment for defendants is not precluded by this opinion, if it is based on some ground other than the reliance issue. Defendants have argued that summary judgment is proper, even if plaintiff has shown reliance, because defendants followed generally accepted accounting principles and did not make any misrepresentations or omissions. Plaintiff disputes this. Both sides have submitted accountants' affidavits. The district court did not base summary judgment on this issue. It is appropriate for us to leave this question for initial determination by the court below.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.