**CAVALIER CARPETS, INC., etc.,**
**Plaintiff-Appellant,**

v.

**Arnold L. CAYLOR, et al.,**
**Defendants-Appellees.**

**No. 82–8627.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 12, 1984.

750

Richard W. Bethea, Jr., Chattanooga, Tenn., John W. Davis, Jr., Frank M. Gleason, Rossville, Ga., for plaintiff-appellant.

L. Branch S. Connelly, Summerville, Ga., for Precision Services.

Richard H. Sinkfield, Atlanta, Ga., for Foster, Peoples & Turner.

Robert B. Adams, Dalton, Ga., for Carpet Shares, Chem-Tech, Varsity.

H. Lamar Mixson, Edward Krugman, Atlanta, Ga., for Caylor.

Before HENDERSON and HATCHETT, Circuit Judges, and JONES, Senior Circuit Judge.

JONES, Senior Circuit Judge:

Plaintiffs appeal from jury verdicts in favor of the defendants in this Rule 10b–5 securities fraud[1] case.   They seek a new

---

**1.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) reads as follows:

Manipulative and deceptive devices

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce of the mails, or of any facility of any national securities exchange—

\*    \*    \*    \*    \*    \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contraven-

tion of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

The Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or any facility of any national securities exchange, (1) to employ any device, scheme or artifice to defraud; (2) to make any untrue statement of a material fact or omit to state a material fact necessary in

trial, contending two of the district court's instructions to the jury concerning the requisite elements of a Rule 10b–5 claim were in error. We find that the district court's instruction assigning to the plaintiffs the burden of proving plaintiffs' reliance in this mixed misrepresentation and omission case was correct. Additionally, though an intervening change in the law made the district court's scienter instruction erroneous, the plaintiffs were not prejudiced and thus are not entitled to a new trial. We affirm.

## I.

Plaintiff Cavalier Carpets, Inc. (Cavalier) is a family-owned corporation founded in 1963 and engaged in the business of manufacture and sale of carpet. Mack Moore is president of Cavalier and also an administrator of the company's pension program, plaintiff Cavalier Carpets, Inc. Profit Sharing Retirement Trust (Trust). In 1967, Cavalier employed defendant Arnold L. Caylor, a certified public accountant, as the corporate accountant. Cavalier prospered during the mid-1960s. When the nation's economy experienced a down turn in the late 1960s, however, the company's financial condition became precarious; by 1971, it was immersed in extremely heavy debt and struggling with cash flow problems. Moore contacted at least one party who expressed an interest in purchasing a portion of Cavalier's assets, but nothing materialized. Moore then discussed Cavalier's financial situation with Caylor, the Cavalier accountant.

In October 1971, Caylor told Moore that several individuals[2] were interested in forming a new company for the purpose of buying the fixed assets of Cavalier, including machinery, equipment, and the Cavalier Building. The new company,[3] defendant Chem-Tech Finishers, Inc. (Chem-Tech),[4] would take over the manufacturing aspect of Cavalier's carpet business and lease back space in the building to Cavalier in which Cavalier would retain its inventory and continue part of its operations, focusing on carpet sales. Chem-Tech was formed and the parties reached an agreement. Chem-Tech bought the Cavalier Building, machinery, and operating assets, paying in excess of $1,200,000. Most of the purchase price was consumed by Chem-Tech's assumption of Cavalier's debt. Thus, Cavalier received only $300,000 in cash. Cavalier also received, as part of the purchase price, a one-year option[5] to purchase twenty-five percent of Chem-Tech's stock.[6]

During 1972, the owners of Chem-Tech,[7] defendants Smith Foster (Foster), Shelby C. Peeples, Jr. (Peeples), and Thomas J. Turner (Turner) decided to combine their Chem-Tech operation with their other carpet business, defendant Precision Services,

order to make the statements made, in light of the circumstances under which they are made, not misleading; or (3) to engage in any act, practice, or course of business which would operate as a fraud or deceit upon any person ... in connection with the purchase or sale of any security.

2. Caylor approached the owners of defendant Precision Services, Inc. (formerly Precision Dyeing & Finishing, Inc.) to see if they would be interested in investing in Cavalier. Precision, incorporated in 1969, was also in the carpet business in Dalton, Georgia, limiting its operation to carpet finishing, dyeing, printing, and tufting. Defendants Smith Foster, Shelby C. Peeples, Jr., and Thomas J. Turner comprised the Board of Directors of Precision. Caylor was corporate accountant for Precision.

3. Precision formed a joint venture with the owners of another Dalton, Georgia carpet finish-ing and dyeing company, Advanced Finishing Company. The resultant joint venture was a corporation, Chem-Tech Finishers, Inc.

4. Defendant Foster was president of Chem-Tech. Defendants Foster, Turner, and Peeples comprised the majority of the Chem-Tech Board of Directors which consisted of five persons.

5. Though Moore's name appeared on the option, the parties agree the option was held by Cavalier.

6. The testimony at trial was conflicting as to whether Cavalier had to pay any additional consideration to acquire 25% of Chem-Tech's stock upon exercising the option.

7. Because of management difficulties inherent in the joint venture, the Advanced Finishing Company investors sold their interest in Chem-Tech to Precision's principals.

Inc. (Precision)[8] because the two businesses were closely related. The plan was for Precision to buy out the capital stock of Chem-Tech. Before the plan was executed, however, several business maneuvers took place. First, in January 1972, Precision's shareholders authorized a stock split, increasing the number of authorized and outstanding shares and reducing the value of each individual share. The split was executed in April 1972 when Precision consummated the purchase of Chem-Tech.[9] Next, Chem-Tech sold its Cavalier/Chem-Tech building to defendant Turner and defendant Carpet Shares, Inc. ("Carpet Shares"), a "paper" corporation with no assets which was owned equally by defendants Caylor, Foster, and Peeples.[10] Finally, the defendant owners of Precision decided to purchase Cavalier's twenty-five percent option in Chem-Tech as part of the plan to purchase Chem-Tech.

In April 1972, Caylor, acting on behalf of Precision, presented Moore with three alternative offers to purchase Cavalier's twenty-five percent option in Chem-Tech.[11] Moore, acting on behalf of Cavalier, selected the second alternative, receiving from Precision $87,500 in cash and 15,000 shares of Precision stock [12] in return for the twenty-five percent Chem-Tech option. Cavalier also received an option to purchase an additional 15,000 shares of Precision stock at $5.00 per share.

The next business transaction relevant here occurred in April 1973. Moore, acting as an administrator of Trust, wanted to invest some of Trust's money. A third party approached Moore and offered to sell Trust a substantial number of shares of Precision stock at $2.50 per share. After consulting with defendant Caylor about the offered price, Moore authorized and directed Caylor to purchase the Precision stock from the third party. Thus, in April 1973, Trust bought 8,951 shares of Precision stock for $22,377.50 (i.e., $2.50 per share). In 1976, Precision was dissolved, and plaintiffs received in liquidation $.50 for each share of Precision stock they owned.

Plaintiffs, Cavalier and Trust, complained about the circumstances surrounding the April 1972 and April 1973 transfers of Precision stock to Cavalier and to Trust, respectively. They alleged that defendants violated Rule 10b–5 and committed common law fraud in connection with those transactions. Specifically, as to the April 1972 transfer of Precision stock to Cavalier, Cavalier alleged that the defendants were guilty of three material omissions and three material misrepresentations: (1) defendants failed to disclose that Precision did not own the building in which it operated, but rather defendants Turner and Carpet Shares owned the building,[13] (2) defendants failed to disclose that the Cavalier/Chem-Tech building was not among the assets Precision was purchasing from Chem-Tech,[14] (3) defendants failed to disclose that the 15,000 shares of Precision stock transferred to Cavalier would be stock issued after a stock split,[15] (4) defend-

---

8. *See supra* note 2.

9. The stock was split 21½ to 1. The split increased the number of authorized shares to 100 million, and the number of outstanding shares to 1,000,000.

10. Carpet Shares was incorporated in 1970. In addition to owning an interest in the Cavalier/Chem-Tech Building, Carpet Shares also owned an interest in the Precision Building. In March 1971, Precision sold its building and land to Turner and Carpet Shares and leased back space in the building in which to operate. Both building transfers were recorded in county records.

11. In return for Cavalier's 25% option in Chem-Tech, Precision offered three alternative propos-

als to Cavalier: (1) Precision pays $150,000 in cash, (2) Precision pays $87,500 in cash, plus 15,000 shares of Precision stock, and (3) Precision pays $25,000 in cash, plus 30,000 shares of Precision stock.

12. Cavalier received 11,750 shares of Precision stock in 1972. The balance, 3,250 shares went to defendant Caylor as payment for arranging the October 1971 sale of Cavalier's fixed assets to Chem-Tech.

13. *See supra* note 10.

14. *See supra* p. 752 & note 10.

15. *See supra* p. 752 & note 9.

ants misrepresented Precision's earnings during the preceding year, 1971, (5) defendants misrepresented that both Precision and Chem-Tech were extremely profitable and that the combination thereof would be even more profitable, making the resultant Precision stock valuable, and (6) defendants misrepresented that Precision would make a public offering of its stock.

As to the April 1973 transfer of 8,951 shares of Precision stock to Trust, Trust alleged the following material nondisclosures and misrepresentations which it contended constituted Rule 10b–5 violation: (1) defendants failed to disclose Precision did not own the building in which it operated but rather leased the space; (2) defendants failed to disclose Precision did not own the Cavalier/Chem-Tech Building; (3) defendants failed to disclose the ten cent par value of Precision stock issued after the stock split; and (4) defendants failed to disclose any information that would correct the material misrepresentations and omissions made to Cavalier in connection with the April 1972 stock transfer.

The case proceeded to trial on these claims, and the jury returned verdicts for the defendants, both on plaintiffs' Rule 10b–5 and common law fraud claims. Plaintiffs appeal, seeking a new trial because, they contend, the trial court committed reversible error in two of its instructions to the jury.

## II.

Plaintiffs first contest the district court's instruction to the jury concerning the burden of proving reliance, a requisite element of a 10b–5 claim.[16] Plaintiffs argue that because their Rule 10b–5 claims alleged nondisclosures, as well as affirmative misrepresentations, they were entitled to a separate instruction, with respect to the omissions, shifting the burden of proof from the plaintiffs to the defendants, so that the defendants had to demonstrate by a preponderance of the evidence that plaintiffs would not have relied on the nondisclosed information. Plaintiffs cite to *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), as support for their position. Plaintiffs sought a separate instruction that they were not required to prove the element of reliance as to the nondisclosures; rather they only had to prove the materiality of the omitted facts.[17]

16. "The separate elements of a 10b–5 claim are well established: first, 'scienter of the defendant,' second, 'materiality of any misrepresentation or omission by the defendant,' third, 'the extent of actual reliance by the plaintiff on the defendant's statements,' and fourth, 'the justifiability of the reliance, frequently translated into a requirement of due diligence by the plaintiff'." *White v. Sanders,* 689 F.2d 1366, 1367 (11th Cir.1982), *quoting Dupuy v. Dupuy,* 551 F.2d 1005, 1014 (5th Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977). *See also, e.g., Diamond v. Lamotte,* 709 F.2d 1419, 1422–23 (11th Cir.1983) (essential elements are false representation of material fact, defendant's scienter, plaintiff's justifiable reliance, and proximate causation of plaintiff's damages).

17. At the jury charge conference, plaintiffs requested the following jury instructions be read to the jury:
PLAINTIFFS' JURY INSTRUCTION REQUEST NO. III–9
RULE 10b–5—RELIANCE—OMISSION v. MISREPRESENTATION
Ladies and gentlemen of the jury, in this case the plaintiffs have alleged that the defendants violated Rule 10b–5 and Section 10

of the Securities Exchange Act of 1934 both by misrepresenting material facts, and by failing to inform the plaintiffs of certain material facts. In other words, the plaintiffs have alleged that the defendants have violated Rule 10b–5 by both their misrepresentations and their omissions.

You will recall that one of the essential elements of a cause of action under Rule 10b–5 and Section 10 of the Security Exchange Act of 1934 is the element of reliance. By reliance I mean that it must be shown by the plaintiffs that a justifiably relied upon the representations of the defendants in making their investment decisions.

Because the plaintiffs have alleged that the defendants have violated the Act and the Rule by both their omissions and their misrepresentations it will be necessary for me to instruct you as to the law of reliance in these cases, for the law is different in cases where it is alleged that the defendants have omitted to state a material fact, and in cases where the defendants have misrepresented a material fact.

(Footnote omitted.)

This, in effect, places on the defendants the burden of proving plaintiffs' nonreliance, that is, proving that the plaintiffs' decision would not have been affected even if defendants had disclosed the omitted facts. *Rifkin v. Crow*, 574 F.2d 256, 261–62 (5th Cir.1978). Plaintiffs contend the district court erred by deleting its proposed separate instruction on reliance as to the alleged omissions. We disagree.

The district court instructed the jury about proof of "reliance" as follows:

Now, in this case the Plaintiffs have alleged that the Defendants violated Rule 10b–5 in Section 10 of the Securities & Exchange Act of 1934 both by misrepresenting material facts and by failing to inform the Plaintiffs of certain material facts. In other words, the Plaintiffs have alleged that the Defendants have violated Rule 10b–5 by both their misrepresentations and their omissions.

You will recall that one of the essential elements of a cause of action under Rule 10b–5 in Section 10 of the Securities & Exchange Act of 1934 is the element of reliance. By reliance I mean that it must be shown by the Plaintiffs that they justifiably relied upon the misrepresentations and omissions of the Defendants in making their investment decisions. The Plaintiffs must show that they reasonably relied upon the information or upon the notion that they had received all mandated disclosure from the Defendants and exercised due diligence in examining the information otherwise available to them.

Now, reliance means, of course, that the investors acted upon the misrepresentation as if it were true, or acted upon the information that was given to him which contained an omission of material fact as if he had been presented with all the facts that were important in making his investment decision. The reliance on the part of the Plaintiffs must be reasonable, and by reasonable reliance, I mean that the Plaintiffs must show that they reasonably relied upon the information or on the notion that it had received all the information from the Defendants that would be material and exercised due dili-

PLAINTIFFS' JURY INSTRUCTION RE-
QUEST NO. III–10
RELIANCE—NONDISCLOSURE

Where a person has an affirmative duty under the Rule to disclose a material fact to the holder of the security, and that person devises a plan to induce the holder to sell the securities without disclosing the material facts that reasonably could be expected to influence his investment decision, positive proof of reliance is not a prerequisite to recovery by the plaintiffs. In other words, where the defendant has omitted to tell the plaintiff of a material fact, then the plaintiff need not prove that he justifiably relied upon the representations of the defendant. Instead, all that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making his investment decision.

(Footnote omitted.)

PLAINTIFFS' JURY INSTRUCTION RE-
QUEST NO. III–11
RELIANCE—MISREPRESENTATION

I have heretofore instructed you on the law of reliance as it relates to a Rule 10b–5 cause of action in which the plaintiff has alleged that the defendant omitted to state a material fact. The following rule of law is applicable to actions where the defendant is alleged to have misrepresented a material fact.

Where a plaintiff has alleged that the defendant made positive misrepresentations of material information, then the plaintiff must prove that he relied upon the misrepresentation made by the defendant.

(Footnote omitted.)

PLAINTIFFS' JURY INSTRUCTION RE-
QUEST NO. III–12
RELIANCE—DEFINITION

I have heretofore instructed you that the plaintiff must prove that he justifiably relied upon the misrepresentations of the defendant, or that the defendant has omitted to state material facts, in which case, the plaintiff need not prove reliance. What do we mean by the term "reliance"?

"Reliance" means, of course, that the investor acted upon the misrepresentation as if it were true, or acted upon the information that was given to him, which contained an omission of material fact, as if he had been presented with all the facts that were important to making his investment decision. The reliance on the part of the plaintiff must be "reasonable." By "reasonable reliance," I mean that the plaintiff must show that he reasonably relied on the information (or on the notion that it had received all the information from the defendant that would be material) and exercised due diligence in examining the information otherwise available to him.

(Footnote omitted.)

gence in examining the information otherwise available to him which relates to the alleged misrepresentation or omission. If you determine that the Plaintiffs would have obtained stock in Precision Services even had they known the full truth, then reliance would not have been shown.[18]

Contrary to plaintiffs' assertions, *Affiliated Ute*, 406 U.S. 128, 92 S.Ct. 1456, is not applicable to this case. The Supreme Court, in the *Ute* decision, pronounced *Ute*'s limitations, circumscribing the application of the *Ute* presumption of reliance to cases involving primarily a failure to disclose in which defendants who had an affirmative duty to disclose stood mute, leaving plaintiffs with absolutely nothing upon which to rely.[19] *Ute* concerned the management and distribution of an American Indian tribe's assets. The tribe formed a corporation to manage the tribe's assets; the corporation issued shares of stock to its Indian shareholders and designated a local bank as its transfer agent. Despite the corporation's request that the bank stress to the shareholders the importance of retaining their stock, two of the bank's assistant managers aided the shareholders in disposing of their stock in the primary market of Indians selling to non-Indians through the bank. The bank assistant managers knew, but failed to disclose to the shareholders that the stock brought a higher price in the resale market consisting entirely of non-Indians. The Court recognized that had the bank operated solely as a transfer agent, it would not have a duty to disclose. *Id.* at 152, 92 S.Ct. at 1471. But, the bank had assumed an affirmative duty to act on behalf of the shareholders; the shareholders relied upon bank personnel when they sold their stock. Thus, the bank officers charged with a responsibility to the shareholders, could not induce the Indians to sell their stock without disclosing the existence of a more favorable non-Indian market; the shareholders had a right to know. *Id.* at 152–53, 92 S.Ct. at 1471–72. *See also Chiarella v. United States*, 445 U.S. 222, 230, 100 S.Ct. 1108, 1115, 63 L.Ed.2d 348 (1980). Because defendants in *Ute* stood mute, giving plaintiffs nothing upon which to rely, the Court gave plaintiffs a presumption of reliance as to the omissions and the defendants lost the reliance issue as a matter of law:

> *Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery.* All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.... This obligation to disclose and this withholding of a material fact establish the requisite elements of causation in fact.

*Affiliated Ute*, 406 U.S. at 152–54, 92 S.Ct. at 1471–72 (emphasis added; some citations omitted).

The Supreme Court further defined the limitations of *Ute* in *Chiarella v. United States*, 445 U.S. 222, 229–30, 100 S.Ct. 1108, 1115–16, 63 L.Ed.2d 348 (1980), a case in which the Court reversed the criminal conviction of an employee of a financial printer who traded on securities based upon nonpublic information he learned in his printing job. The court said section 10(b) liability for silence, in connection with the purchase and sale of securities, "is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction." *Id.* at 230, 100 S.Ct. at 1115. The Court cited *Affiliated Ute* as an example of a relation-

---

**18.** We note that the language of the court's instruction is very similar to the instruction requested by the plaintiffs, *see supra* note 17, except that the court deleted the separate instruction on reliance as to the omissions.

**19.** *Ute* does not shift the burden of proof, i.e., the risk of nonpersuasion, to the defendant in an omission case; rather, it simply shifts the burden of going forward with the evidence to the defendant. The presumption vanishes whenever the evidence would permit the trier of fact to conclude that the omitted information would not have affected the plaintiffs' decision to enter into the transaction in question.

ship of trust and confidence giving rise to a duty to disclose. *Id.*[20]

This Circuit has recognized the limited reach of the *Ute* presumption, applying it only in primarily omission cases in which a duty to disclose existed. First, as to duty to disclose, we have recognized that *Ute* liability for nondisclosure, and thus the *Ute* presumption of reliance as to the nondisclosure, is triggered only when a relationship of trust and confidence exists between victim and deceiver creating a duty to disclose. *Gower v. Cohn,* 643 F.2d 1146, 1156–57 (5th Cir.1981).[21]

■ In order to be entitled to a *Ute* presumption of reliance upon an omission obviating the requirement that plaintiffs must prove specific reliance upon a particular nondisclosure, plaintiffs must demonstrate they generally relied upon the defendant in order to recover in a Rule 10b–5 case. *Simon v. Merrill Lynch, Pierce, Fenner and Smith,* 482 F.2d 880, 884 (5th Cir.1973); *Vohs v. Dickson,* 495 F.2d 607, 622 (5th Cir.1974); *Rifkin v. Crow,* 574 F.2d at 261; *Huddleston v. Herman & MacLean,* 640 F.2d 534, 547 (5th Cir.) (en banc), *modified,* 650 F.2d 815 (1981), *aff'd in part and rev'd in part,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Thus, an investor who makes his own investment decisions and does not rely upon the defendant for advice when making these decisions is barred from asserting he presumably relied upon a particular omission. *Rifkin v. Crow,* 574 F.2d at 261; *Simon,* 482 F.2d at 884. In this case, the owners of Precision had no particular duty to Moore or plaintiff Cavalier or the Trust in relation to the April 1972 and 1973 sales of Precision stock to plaintiffs. Plaintiffs were not shareholders in Precision at the time of the purchase. Defendants assumed no responsibility to act on behalf of or in the interests of plaintiffs; defendants had no duty

to place plaintiffs' welfare above their own. Moore, acting on behalf of plaintiffs was an experienced businessman, familiar with the carpet industry in Dalton, Georgia, and the dynamics of a small closely-held corporation engaged in the carpet business. Moore made his own investment decisions. His 1972 and 1973 purchases of Precision stock were the outcome of arms length business transactions. Moore cannot assert logically that he generally relied upon defendants, nor that he had a relationship of trust and confidence when deciding whether to invest in Precision.

■ This case also fails to qualify for a *Ute* presumption of reliance, shifting to the defendant the burden of coming forward with evidence of nonreliance, because this is not a case "involving primarily a failure to disclose." *Affiliated Ute,* 406 U.S. at 153, 92 S.Ct. at 1472. This circuit has recognized this second limitation on *Ute,* noting that *Ute* was a case involving primarily a nondisclosure of material facts rather than misstatements. *Moody v. Bache & Co., Inc.,* 570 F.2d 523, 528 (5th Cir.1978). Ideally, a trial court should characterize a Rule 10b–5 case as either being a "misrepresentation" case or an "omission" case, in order to determine whether the plaintiffs retain the burden of proving the reliance element, or the plaintiffs are relieved by the *Ute* presumption of reliance. *Huddleston v. Herman & MacLean,* 640 F.2d at 548; *Rifkin v. Crow,* 574 F.2d at 263. But some cases involving both alleged misstatements and omissions relating to the sale of securities "cannot properly be characterized as an omissions case of the type for which the *Affiliated Ute* presumption was fashioned." *Huddleston v. Herman & MacLean,* 640 F.2d at 548. *Huddleston,* a case involving alleged misstatements and omissions in a prospectus published pursuant to a public offering, is instructive on the nonapplicability of the

---

**20.** As a further example, the Court said corporate insiders have "an obligation to place the shareholder's welfare before their own," creating a duty to disclose, *Chiarella v. United States,* 445 U.S. 222, 230, 100 S.Ct. 1108, 1115–16, 63 L.Ed.2d 348 (1980).

**21.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Ute* presumption to cases mixing allegations of omissions and misstatements. The *Huddleston* court said:

> [A mixed case] is not a case in which difficulties of proof of reliance require the application of the *Affiliated Ute* presumption. Because the plaintiffs were not entitled to a presumption of reliance, a jury finding that the plaintiffs relied upon the misstatements and omissions ... was essential to the plaintiffs' recovery.

*Id.* at 548.[22] We also note the practical problems of a dual jury instruction on reliance on a securities fraud case where both alleged misstatements and omissions are present and the probability of jury confusion. A dual instruction would require the jury "to search for proof of reliance by the plaintiff with regard to the misrepresentations, and to search for proof of nonreliance by the defendant with regard to the omissions." *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 188 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

The instant case is a mixed securities fraud case, similar to *Huddleston, supra,* involving alleged misrepresentations and omissions. Plaintiffs allege three omissions and three misstatements in relation to the 1972 purchase of Precision stock; plaintiffs basically repeat the same allegations as to the 1973 stock purchase. At the jury charge conference during trial, all the parties, including the plaintiffs, agreed with the district court's characterization that this was a mixed misrepresentation and omission case.[23] Plaintiffs first argue in

their brief on appeal that this is primarily an omission case. We hold this is not primarily an omission case of the type contemplated by *Affiliated Ute.* Rather, this is a mixed misrepresentation and omission securities fraud case for which a complicated dual instruction on reliance is inappropriate. *Accord Austin v. Loftsgaarden,* 675 F.2d 168, 178 n. 21 (8th Cir.1982); *Sharp v. Coopers & Lybrand,* 649 F.2d at 188. We adhere to the mixed case rule of *Huddleston, supra,* and find that the jury was correctly instructed that it must find plaintiffs relied upon the misstatements and omissions for plaintiffs to recover. *Huddleston,* 640 F.2d at 548.

■ Even if it were the law that the plaintiffs, in the factual context presented here, were entitled to a presumption of reliance as to the information the defendants omitted to disclose, we conclude that the presumption vanished during the presentation of the evidence. For prior to the close of all the evidence, a reasonable jury could have concluded that plaintiffs would not have relied on the omitted information. Thus, when it came time to instruct the jury, the court had to charge it, as it did, that plaintiffs had the burden of proving reliance as to all the misrepresentations and omissions.

In summary, we believe the district court's instruction on reliance was an accurate statement of the law correctly guiding the jury. An instruction to a jury is not reversible as erroneous "unless the court is 'left with a substantial and ineradicable doubt as to whether the jury was properly

---

**22.** The court's analysis of the facts in *Huddleston,* which are analogous to the facts in the instant case, is relevant.

> This case, involving alleged misstatements and omissions in a prospectus published pursuant to a public offering, cannot properly be characterized as an omissions case of the type for which the *Affiliated Ute* presumption was fashioned. The defendants did not "stand mute" in the face of a duty to disclose as did the defendants in *Affiliated Ute.* [Citations omitted.] They undertook instead to disclose relevant information in an offering statement now alleged to contain certain misstatements of fact and to fail to contain other facts neces-

sary to make the statements made, in light of the circumstances, not misleading.
*Huddleston v. Herman & MacClean,* 640 F.2d at 548.

**23.** At the jury charge conference, the district court observed:

> Well, you all [plaintiffs] submitted a number of requests having to do with this area and—I had no problem with them, if the case were strictly a representation case. I have [sic] thought everyone conceded that this was a mixed bag of worms, that is, that it was a misrepresentation, and omission case, which is a different creature....

guided in its deliberations.'" *Johnson v. Bryant*, 671 F.2d 1276, 1280 (11th Cir.1982) (citing *Miller v. Universal City Studios*, 650 F.2d 1365, 1372 (5th Cir.1981)).

## III.

■ Plaintiffs also argue they are entitled to a new trial because the district court's instruction on the scienter element of its 10b–5 case imposed an incorrect standard of proof upon the plaintiffs. In accordance with the law in this circuit at the time of trial, the district court instructed the jury that the plaintiffs had to prove by clear and convincing evidence that defendants acted with scienter. *See Huddleston*, 640 F.2d at 546.[24] Subsequent to trial, which ended June 25, 1982, and while this appeal was pending, the Supreme Court reversed this portion of *Huddleston* and held that persons seeking relief under section 10(b) and Rule 10b–5 need to prove their claims by a mere preponderance of the evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 692, 74 L.Ed.2d 548 (1983), *rev'g in part*, 640 F.2d 534 (5th Cir.), *modified*, 650 F.2d 815 (5th Cir.1981). Thus, the instruction that plaintiff had to prove scienter by clear and convincing evidence was in error, and the jury decided the case for defendants under the wrong burden of proof. Because this error is prejudicial on its face, we must remand for a new trial unless we find that

the error was harmless. *Mandel v. Max-France, Inc.*, 704 F.2d 1205, 1207 (11th Cir.1983).

Here, the jury reached a verdict for the defendants on both the Rule 10b–5 and the common law fraud claims. In Georgia, the elements of common law fraud, for our purposes, are the same as the essential elements of a 10b–5 claim.[25] In particular, the scienter element in a 10b–5 claim and in a Georgia common law fraud claim is identical. Scienter is a mental state embracing a willful intent to deceive, manipulate, or defraud, and may be satisfied by a showing of recklessness on the part of the defendant. *Compare Broad v. Rockwell International Corp.*, 642 F.2d 929, 961 (5th Cir.1981) *and G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 962 (5th Cir.1981) *with Clements v. Warner Robins Supply Co., Inc.*, 235 Ga. 612, 221 S.E.2d 35, 37 (1975) *and Insilco Corp. v. First National Bank of Dalton*, 156 Ga.App. 382, 383, 274 S.E.2d 767, 769 (1981). The district court's jury instructions on both the 10b–5 and common law fraud claims reflected this scienter requirement.[26] The district court instructed the jury that the plaintiffs must prove each and every element of common law fraud, including scienter, by a preponderance of the evidence; the jury found against the plaintiffs. Obviously, the jury decided that plaintiffs failed to prove scien-

---

**24.** The district court charged the jury that the other elements of the plaintiffs' 10b–5 claim required proof by a preponderance of the evidence.

**25.** "The five elements of fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 769 n. 1, 208 S.E.2d 794, 797 n. 1 (1974). *See also, e.g., Hayes v. Irwin*, 541 F.Supp. 397, 438 (N.D.Ga.1982), *aff'd*, 729 F.2d 1466 (11th Cir. 1984). *See also supra* note 16.

**26.** When instructing the jury on the elements of a 10b–5 claim, the district court defined scienter as: "[a] mental state embracing intent to deceive, manipulate, or defraud. The element of scienter may be satisfied by the Plaintiffs upon a showing of severe recklessness on the part of

the Defendants." The district court's jury instruction on the elements of common law fraud in Georgia included the following: "two, at the time the Defendants made these representations, the Defendants must have known that such representations were false or else the Defendants must have made such representations with a reckless disregard for the truth or falsity of those representations; third, the Defendants must have made those representations or omissions with the intention and purpose of deceiving the Plaintiffs...." "[A]t the time the Defendants made the representations to the Plaintiff, or else at the time the Defendants omitted to state material facts to the Plaintiffs, the Defendants must have known that the representations that they made were false or that they made these representations or omitted to state material facts with a reckless disregard for their truth or falsity."

ter by a preponderance of the evidence. We treat the jury's verdict on common law fraud as though it were a special verdict, *see* Fed.R.Civ.P. 49, illuminating the jury's deliberations on the 10b–5 claim. Logically, the jury also decided that plaintiffs failed to establish defendants' scienter by the preponderance of the evidence, much less by clear and convincing evidence, on their 10b–5 claim. Thus, the resultant verdict against the plaintiffs and for the defendants would have been no different had the district court charged the jury that scienter under 10b–5 had to be shown by the preponderance of the evidence. The erroneous jury instruction was not in fact prejudicial to the plaintiffs; it was harmless error.

AFFIRMED.