**Dann S. SHEFTELMAN, et al.**

v.

**Allen O. JONES, et al.**

No. C84-0472A.

United States District Court,
N.D. Georgia,
Atlanta Division.

July 16, 1987.

See also 636 F.Supp. 263.

John A. Howard, Andrew J. Hinton, Fortson & White, Harold Wilson Whiteman, Jr., Michael J. Gorby, Fain, Gorby, Reeves & Moraitakis, Atlanta, Ga., R. Bruce McNew, Nicholas E. Chimicles, Christopher T. Reyna, Greenfield, Chimicles & Lewis, Haverford, Pa., Richard H. Adams, Robert W. Anthony, Smathers, Pleus, Adams, Fassett & Divine, Orlando, Fla., for plaintiffs.

H. Sanders Carter, Jr., Carter, Ansley, Smith & McLendon, Atlanta, Ga., for Cobb & Cole.

Kirk M. McAlpin, Jr., Peter J. Anderson, Jr., Peterson, Young, Self & Asselin, Atlanta, Ga., for J. Milton Newton, Arch W. Roberts, R.C. Towne, Inc., Heritage Inv. Securities, Inc., Thomas F. White & Co., First Honolulu Securities, Inc., f/k/a Hyman Kowal & Co., First Heritage Corp., William Ceas & Co.

F. Carlton, King, Jr., Ford & Harrison, Atlanta, Ga., for R.W. McElroy, Arthur M. Rice, Jr.

William R. Lester, Gershon, Olim, Katz & Loeb, Atlanta, Ga., David L. McClenahan, Carolyn M. Branthoover, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Mihai Marcu.

Emmet J. Bondurant, II, Bondurant, Mixson & Elmore, Atlanta, Ga., J. Vernon Patrick, Jr., J. Vernon Patrick, Jr. & Associates, P.C., Birmingham, Ala., for Holland & Knight.

J. Alexander Porter, Asbill, Porter, Churchill & Nellis, Atlanta, Ga., for Hereth, Orr & Jones, Finerock Corp., Jack Hereth.

William J. Cobb, H. Marshall Korschun, Kocher, Wilson, Korschun & Cobb, Atlanta, Ga., for Jack Hereth.

J. Kirk Quillian, Winifred D. Simpson, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for Yankelovich, Skelly & White, Inc.

A. Timothy Jones, T. Ryan Mock, Jr., John D. Steel, Freeman & Hawkins, Atlanta, Ga., for Allen O. Jones, James E. Dorsey.

Robert W. Beynart, John L. Latham, Smith, Gambrell & Russell, Atlanta, Ga., for American Mun. Securities, Fischer, John, Allen & Burke, Inc., Henderson, Few & Co., Hertzfeld & Stern, Heyman-Cole Inv. Securities Corp., Marion Bass Securities Corp., Raymond, James & Associates, Richardson Greenshield Securities, Swink & Co., Inc., Wood Gundy Corp.

John T. Marshall, Thomas S. Richey, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for James E. Dorsey, Arnall, Golden & Gregory.

Herbert P. Schlanger, Atlanta, Ga., for Royal Care Communities, Ltd., Royal Care Communities, Inc., Foundation Investors, Ltd., A.O. Jones & Co., Inc.

Richard K. Hines, V, John W. Winborne, III, Eric J. Spitler, Neely & Player, Atlanta, Ga., for National Union.

Richard P. McElroy, Alexander D. Bono, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Peyton S. Hawes, Jr., Cofer, Beauchamp & Hawes, Atlanta, Ga., Ian M. Comisky, Blank, Rome, Comisky, & McCauley, W. Palm Beach, Fla., for Laventhol & Horwath.

Jack H. Watson, Jr., Long, Aldridge & Norman, Atlanta, Ga., for Kutak, Rock & Huie.

ORDER

RICHARD C. FREEMAN, District Judge.

This securities fraud action is before the court on plaintiffs' motion for class certification. Fed.R.Civ.P. 23. Several parties oppose the motion.[1] Before addressing the

---

1. Numerous defendants oppose plaintiffs' motion for class certification. Putative class member Kenneth Wong also opposes the motion for class certification. In light of the court's February 13, 1987, order Wong lacks standing to raise objections to class certification. Thus, the court will grant plaintiffs' motion to strike. The substance of Wong's objections, in any event, are addressed in this order.

merits of the class certification motion, the court will discuss briefly the factual background of this action.

This litigation arises from an attempt to finance a life care facility for the elderly in Winter Haven, Florida known as the Royal Regency project. The developers intended to purchase an existing two-story apartment complex and convert it into a residential care facility. The developers also planned to construct an adjoining building to house a dining room and nursing care facility.

The Polk County Industrial Development Authority issued $53,170,000.00 in Polk County Industrial Development Authority First Mortgage Health Care Facilities Revenue Bonds, Series 1982 ("the bonds") to finance the project. The bonds were issued pursuant to an Official Statement dated October 18, 1982. The project failed and the trustee declared a default in December 1983.

Plaintiffs filed this suit on March 4, 1984. Plaintiffs seek to represent a class defined as "all persons who purchased the Bonds from the date on which they were first offered, on or about October 1, 1982, to December 1, 1983 ("the Class Period"), who have sustained damages, with the exception of the defendants herein, members of the immediate families of each of the individual defendants, any entity in which any of these defendants has a controlling interest, and the legal representatives, heirs, successors, affiliates or assigns of any of the defendants ("the Plaintiff Class")."

Plaintiffs seek relief under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and the Florida law of negligent misrepresentation. The court dismissed plaintiffs' section 17(a), RICO, and negligent misrepresentation claims. The court subsequently requested that the parties file additional briefs on the negli-

gent misrepresentation claim. The court will address those briefs below. Plaintiffs' primary theory of liability at this point, however, is Rule 10b–5.

Plaintiffs are advancing three distinct theories of liability under Rule 10b–5. First, plaintiffs claim that each class member has a claim for "misrepresentations and omissions" provided to the class. Plaintiffs argue that the Official Statement is the primary source of the misrepresentations and omissions. Some putative class members did not receive a copy of the Official Statement. *See* Affidavit of Kenneth T. Wong, filed November 13, 1986. Nevertheless, plaintiffs argue that the misrepresentations and omissions were identically misrepresented and omitted to all class members.

Second, plaintiffs contend that all class members possess a claim that "but for" the defendants' fraud the bonds could not have issued. This theory derives from the decision in *Shores v. Sklar*, 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983). Plaintiffs contend that this theory applies to both new issue and developed market situations.

Last, plaintiffs maintain that defendants' fraudulent conduct inflated the price of the bonds. Plaintiffs assert that the bond price was not set arbitrarily but was fixed with reference to market forces and the degree of risk disclosed.

Plaintiffs filed their initial brief in support of class certification on July 13, 1984, in accordance with L.R. 300–2, N.D.Ga. Pursuant to a briefing schedule the parties have now filed additional briefs and plaintiffs' motion for class certification is ripe for determination.

As a preliminary matter independent of the class certification issue, defendants argue that plaintiffs have failed to state a fraud on the market cause of action. Defendants note that prior orders of this court dismissed plaintiffs' conspiracy claims with leave to amend. Relying on

Pursuant to settlement agreements reached with plaintiffs, Arnall Golden & Gregory, James E. Dorsey, and Kutak, Rock & Huie support class certification for settlement purposes.

*Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981) (en banc), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), defendants assert that a conspiracy among defendants is an essential element of a fraud on the market claim. *Shores* does require evidence of a fraudulent scheme. 647 F.2d at 468–70. Some courts have interpreted this language to require a conspiracy among defendants. *See Ross v. BankSouth,* [1985–1986 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 92,526 at 93, 155 (N.D.Ala. Feb. 25, 1986) [Available on WESTLAW, DCT database].

This court, however, does not find a conspiracy requirement so obvious. In *Lipton v. Documation, Inc.,* 734 F.2d 740, 747 n. 11 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985), the Eleventh Circuit declined to address the fraudulent scheme requirement. The court did note that 10b–5(3) does not mandate the presence of a scheme. *Id.* Thus, for purposes of the class certification motion, the court will assume that plaintiffs have stated two viable fraud on the market claims.

The court does note that two fraud on the market cases, *Ross v. Bank South,* [1985–1986 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 92,526 (N.D.Ala. Feb. 25, 1986); and *Sanders v. Robinson Humphrey/American Express, Inc.,* 634 F.Supp. 1048 (N.D.Ga.1986) are currently pending before the Eleventh Circuit. These appeals may shed further light on how the Eleventh Circuit interprets the fraud on the market theory. Defendants, of course, are free to file summary judgment motions on the fraud on the market claims.

### 1. *Prerequisites to a Class Action*

The decision on whether to grant class certification is vested within the trial court's discretion. *See Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1347 (11th Cir.1983). Plaintiffs bear the burden of establishing that all the requirements of Rule 23 are met in this case. *See Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir. Unit A 1981). The court first will examine whether plaintiffs have satisfied the requirements of Rule 23(a). Fed. R.Civ.P. 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### A. *Numerosity*

To establish numerosity plaintiffs must demonstrate that the class is so large that joinder is impracticable. *See generally Kilgo v. Bowman Transportation, Inc.,* 789 F.2d 859, 878 (11th Cir.1986) (practicability of joinder depends on size of class, ease of identifying its number, and facility of effecting service). Defendants do not dispute plaintiffs' contention that the class numbers approximately 4,000 members and that joinder is impracticable. Plaintiffs have satisfied the numerosity requirement.

### B. *Common Questions of Law or Fact*

Under Rule 23(a)(2) plaintiffs must demonstrate that questions of law or fact are common to the class members. Plaintiffs have satisfied this requirement. Numerous questions of both fact and law are common to the class, including whether the Official Statement contained omissions and misstatements and whether the defendants are liable under Rule 10b–5.

### C. *Typicality of Named Plaintiffs*

The typicality requirement of Rule 23(a)(3) is satisfied if the claims of the named plaintiffs have the same essential characteristics as the class at large. *See Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985). Factual differences between the claims of the named plaintiffs and the other class members do not necessarily preclude typicality. *Id.*

Named plaintiffs contend that the essence of their claim is that the bonds were marketed to the public at artificially

inflated prices because of defendants' misstatements and omissions. Plaintiffs assert that the absent class members' claims are identical. Defendants assert that plaintiffs do not have typical fraud on the market claims because named plaintiffs also have a "misrepresentation and omission" claim. The court, however, does not believe that misrepresentation and omission claims and fraud on the market claims are mutually exclusive. In *Rifkin v. Crow*, 574 F.2d 256 (5th Cir.1978), for example, the plaintiff relied on various company reports in addition to market forces. *Id.* at 259–60. The Fifth Circuit found nothing inconsistent with this testimony and noted that this testimony would support reliance under the "most restricted reliance requirement." *Id.* at 260. Similarly, the court in *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 323 (E.D.Pa.1987), held that the named plaintiff's potential direct misrepresentation claim did not render him inadequate to prosecute a fraud on the market claim.

The Eleventh Circuit's decision in *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir.1983) also militates in favor of a finding that plaintiffs' claims are typical. The named plaintiff in *Kennedy* did not read or rely on the prospectus and hence sought to assert a fraud on the market claim. *Id.* at 717. Other class members, however, read and relied on the prospectus. Nevertheless, the court found the plaintiff's claim typical of the class. The court stated:

> [The named plaintiff's] claim is not an individual, separate grievance.... He ... alleged that appellants committed various illegal acts in perpetrating the fraud, including the failure to disclose material facts in the ... prospectuses. In other words, [the named plaintiff] claimed and later proved that appellants committed the same unlawful acts in the same method against an entire class. Thus, all members of this class have identical claims.

*Id.*

Defendants also argue that the named plaintiffs' fraud on the market claims are not typical of the fraud on the market claims of other class members who did not read the prospectus. Defendants cite *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 339–40 (N.D.Ill.1982), in support of this proposition. The *McNichols* court reasoned that the named plaintiffs' fraud on the market claims were not typical because the named plaintiffs were subject to the defense that they did not rely on the market.

The court agrees that a substantial showing that plaintiffs did not rely on the market would render plaintiffs' claims atypical and/or plaintiffs inadequate class representatives. The evidence, however, indicates that the named plaintiffs relied on the market, in addition to other sources, in deciding whether to invest in the bonds. *See* Volume 4 of Appendix To Plaintiffs' Reply Brief In Support Of Their Motion For Class Certification, Plaintiff White's Response To All Of Defendants' Discovery Requests at 31; Plaintiff Brammier's Response To All Of Defendants' Discovery Requests at 31; Plaintiff Wallace's Response To All Of Defendants' Discovery Requests at 31; and Plaintiff Gessner's Response To All Of Defendants Discovery Requests at 31. As defendants point out, plaintiffs relied on other sources in addition to the market. Nevertheless, defendants have not demonstrated that plaintiffs did not rely on the market.

### D. *Adequacy of Representative Parties*

Under rule 23(a)(4) the court must be satisfied that "the representative parties will fairly and adequately protect the interests of the class." This subsection mandates an examination of the adequacy of plaintiffs' attorneys as well as a determination about the adequacy of the named plaintiffs. *See Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir.1985).

With respect to the adequacy of plaintiffs' counsel, neither the court nor the defendants entertain any doubt that plaintiffs' attorneys possess the requisite skill and ability to litigate plaintiffs' claims. Defendants, however, maintain that two conflicts of interest and an alleged local

rule violation preclude plaintiffs' counsel from adequately representing the class.

■ L.R. 300–4, N.D.Ga. circumscribes severely the ability of plaintiffs' counsel to communicate with potential class members in a 23(b)(3) class action. In this case, the named plaintiffs apparently contacted plaintiffs' counsel regarding the status of the litigation. Subsequently plaintiffs' counsel contacted the named plaintiffs. Defendants contend that this contact violated Rule 300–4.[2] In a hearing held on September 10, 1984, the court expressed doubts regarding the constitutionality of L.R. 300–4. In view of the September 10 colloquy, the court finds that any alleged violation of Rule 300–4 does not render plaintiffs' counsel inadequate.

■ Defendants also point to two conflicts of interest allegedly rendering plaintiffs' counsel inadequate. First, defendants point out that plaintiffs' counsel seeks to represent competing classes against certain common defendants. Defendants in this action include Hereth, Orr & Jones, Inc. ("HOJ"); Swink & Co., Inc.; J. Milton Newton, Inc.; Finerock Corporation; and Arnall Golden & Gregory. With the exception of J. Milton Newton, Inc. these parties also are defendants in *Anderson v. Bank South,* No. CA 85–1222–CIV–ORL–18 (M.D.Fla.), a proposed class action also litigated by plaintiffs' counsel. Defendants contend that Swink could not satisfy competing judgments in this action and *Anderson.* *See* Affidavit of Patrick James, general counsel for Swink (copy of affidavit attached to defendants' September 15, 1986, brief as exhibit C). Defendants HOJ and J. Milton Newton, Inc. also are unable to satisfy competing judgments. Defendants note that other courts have found that similar conflicts of interest render plaintiffs' counsel inadequate. *See Jackshaw Pontiac, Inc. v. Cleveland Press Publishing Co.,* 102 F.R.D. 183, 192 (N.D. Ohio 1984).

Plaintiffs contend that this alleged conflict of interest is illusory. Plaintiffs note that they have reached a tentative settlement with Arnall Golden & Gregory. Because no evidence exists that Arnall cannot comply with the settlement terms, plaintiffs maintain that Arnall can no longer present a conflict of interest problem. Similarly, plaintiffs argue that because HOJ has no assets, competing judgments against HOJ are immaterial. Plaintiffs also maintain that the inability of Swink to satisfy competing judgments is irrelevant. Plaintiffs note that they contend Swink is liable under a joint venture theory. If plaintiffs are successful in establishing this joint venture theory, they maintain that all participants in the joint venture will be liable. Thus, plaintiffs contend that the combined resources of the broker defendants must be insufficient in order to establish a conflict of interest.

This potential conflict of interest presents some concern. Nevertheless, the court concludes that it does not render plaintiffs' counsel inadequate. As plaintiffs note in the preceding paragraph many of the alleged conflicts are illusory. Moreover, the potential conflicts are very speculative at this time. The *Anderson* case has yet to be certified as a class action. Plaintiffs must obtain favorable judgments in both this case and *Anderson.* Defendants must then be unable to satisfy the judgments before any concrete conflict of interest arises.

Not only is this alleged conflict of interest speculative at this point, but several procedural safeguards exist to eviscerate any conflict that may arise. First, plaintiffs are represented by co-counsel untainted by this alleged conflict. Second, the court must approve any proposed settlement of this action. Fed.R.Civ.P. 23(e). Last, the court can and will require that the notice to the class members disclose the alleged conflict. Other courts have adopted this measure to ensure adequacy of representation. *See Ross v. Bank*

---

**2.** Citing *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985), defendants state that this court and the Eleventh Circuit have "strictly and rigorously" upheld the stric-

tures of this local rule. The *Kleiner* court's holding, however, did not rest on the local rule. 751 F.2d at 1200.

*South,* [1985–1986 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,526, at 93,150 (N.D. Ala. Feb. 25, 1986).

■ Defendants' second conflict of interest allegation concerns plaintiffs' counsel's participation in *Ockerman v. King & Spalding,* No. C85-2958A (N.D.Ga.) (Freeman, J.). Plaintiffs' counsel seek to certify a class in *Ockerman* identical to the class in this action. Defendants, however, contend that plaintiffs' counsel is pursuing inconsistent positions in the two actions regarding the tax deductibility of the bonds. Defendants contend that if plaintiffs prevail in *Ockerman* each class member will incur federal income tax liability to the extent the bondholder reported the bond income as tax deductible.

Plaintiffs contend that the tax deductibility of the bonds is not at issue in *Ockerman.* Plaintiffs also point out that they cannot incur any liability to the IRS unless they are successful in *Ockerman.* If plaintiffs are successful in *Ockerman* they note that some defendant will be liable for the damages. Finally, plaintiffs note that any class member concerned about the tax deductibility issue can opt out of *Ockerman.* The court agrees with plaintiffs reasoning and concludes that the *Ockerman* litigation does not render plaintiffs' counsel inadequate.

### 2. *Predominance of Common Questions*

In addition to satisfying the four class action prerequisites, a plaintiff must demonstrate the applicability of one of the subsection (b) theories. In this action, plaintiff is proceeding under Rule 23(b)(3). This provision requires the court to find that:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants argue that questions common to the class do not predominate and that questions individual to each class member render the case unmanageable as a class action. Defendants note that reliance is an essential element of all 10b–5 claims. *See Lipton v. Documation, Inc.,* 734 F.2d 740, 742 (11th Cir.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *Huddleston v. Herman & MacLean,* 640 F.2d 534, 543 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds,* 459 U.S. 357, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Defendants contend that individual issues of reliance will arise for each class member, resulting in 4,000 "mini-trials." Plaintiffs assert that they are entitled to a presumption of reliance on both their fraud on the market and their misrepresentation and omission claims.

An initial question arises regarding whether the court should examine the reliance question on this motion for class certification. In *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme Court cautioned against conducting a preliminary inquiry into the merits of a suit to determine whether it could be maintained as a class action. Applying this reasoning, some courts have declined to examine the reliance issue on a motion for class certification. *See, e.g., Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 198 (S.D.N.Y.1986).

The Eleventh Circuit, however, has indicated that the principles of *Eisen* should not artificially impede the trial court's duty to ensure that plaintiff has met the Rule 23 requirements. *See Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir.1984). Thus, courts in this circuit have addressed the reliance issue when ruling on the propriety of class certification. *See Sanders v. Rob-*

*inson Humphrey/American Express, Inc.*, 634 F.Supp. 1048, 1061–64 (N.D.Ga. 1986), *appeal pending,* (11th Cir.). This court concludes that a reasoned decision on class certification necessitates some inquiry into the reliance question.

As noted, reliance is an issue in all 10b–5 claims. In certain cases, however, the plaintiff is entitled to a presumption of reliance. If a presumption of reliance were applicable, it would simplify greatly adjudication of the case as a class action. In an effort to establish the presumption of reliance for their misrepresentation and omission claim, plaintiffs argue that *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) applies to this case. In *Affiliated Ute* the Supreme Court stated:

> Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.

406 U.S. at 153–54, 92 S.Ct. at 1472. Thus, the *Affiliated Ute* presumption applies only to cases primarily involving omissions. The question before the court is whether plaintiffs' claims are primarily misrepresentations, primarily omissions, or some combination of misrepresentations and omissions.

■ The distinction between a misrepresentation and an omission is often "fuzzy." *See* L. Loss, Fundamentals of Securities Regulation at 1129 (1983). Plaintiffs contend that under *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987), a failure to disclose information to make previous disclosures not misleading is an omission. The court disagrees. *Rudolph* does not discuss the distinction between a misrepresentation and an omission. The *Rudolph* court merely held that a violation of Rule 10b–5 occurs when a party fails to state a material fact necessary to make statements made not misleading. All misrepresenta-

tions involve, to some extent, a failure to disclose relevant information. Under plaintiffs' expansive interpretation each misrepresentation involves an omission and is entitled to the *Ute* presumption. This court declines to adopt this approach. *See Beck v. Cantor, Fitzgerald*, 621 F.Supp. 1547, 1556 (D.Ill.1985) ("[R]eliance cannot be presumed where the alleged material omissions constitute only the converse of the alleged affirmative and material misrepresentations.").

■ An examination of plaintiffs' third amended complaint indicates that this is a mixed misrepresentation and omission case. Several paragraphs allege omission of material information. Paragraphs 69–78, for example, allege, *inter alia,* a failure to disclose the lack of a development plan, the failure of the pre-construction marketing effort, and the developer's failure to submit requisite monthly reports. Other paragraphs of the third amended complaint, however, allege material misrepresentations. Paragraph 51 states that "[t]he representations that the conversion of the existing apartment complex would include elevators, referred to in paragraphs 47–50 hereof, were materially misleading...." Likewise, paragraph 52 states that "[t]he Official Statement and the Feasibility Report ... were materially misleading in that they concealed the highly material facts that elevators were not planned for the existing apartment complex...." Similarly, paragraphs 55–59 all contain "representations" that plaintiffs contend were "materially misleading." Third Amended Complaint, ¶ 60.

In *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749 (11th Cir.1984), the Eleventh Circuit held that the *Ute* presumption does not apply to cases involving both misrepresentations and omissions. *Id.* at 756–57. The court noted that a dual jury instruction on the reliance issue would create practical problems. *Id.* at 757. Thus, for purposes of this motion, the court concludes that this is a mixed misrepresentation and omission case and that plaintiffs are not entitled to the *Ute* presumption of reliance.

■ The failure to establish the *Ute* presumption does not affect plaintiffs' fraud on the market claims. These claims already receive a presumption of reliance. *See Lipton v. Documation, Inc.*, 734 F.2d 740, 747–48 (11th Cir.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985). The inapplicability of the *Ute* presumption, however, does complicate plaintiffs' misrepresentation and omission claims. Each plaintiff will have to demonstrate reliance prior to recovery on this claim.

■ Defendants argue that the individual reliance issue defeats predominance of common questions and renders the misrepresentation and omission claim unmanageable. The court agrees that the reliance problem will create management difficulties. Nevertheless, the court cannot state that a class action would be unmanageable. Discovery will narrow the individual reliance issue. Separate trials on reliance or the appointment of a special master also are potential vehicles to resolve questions of reliance. The court is willing to consider other alternatives that the parties may suggest.

Nor can the court conclude that individual reliance defeats the predominance of common questions. Reliance is the only issue defendants have identified as not common to the class. In contrast, whether the Official Statement contained the numerous alleged misstatements and omissions, and whether these misrepresentations and omissions were material are questions common to this class. Whether the securities would have been issued but for the fraud and whether the market price was affected are questions common to plaintiffs' fraud on the market claims. The court finds that these common questions will predominate over the questions affecting individual members.

Moreover, securities fraud actions are particularly amenable to class treatment because they frequently involve a large number of plaintiffs with relatively small individual claims. *See Blumenthal v. Great American Mortgage Investors*, 74 F.R.D. 508, 515 (N.D.Ga.1976). This case provides no exception to this general principle. No evidence exists that individual class members desire to prosecute separate actions or that a significant number of class members have commenced individual suits.

As defendants point out, several decisions have denied certification in securities cases involving individual questions of reliance. *See Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir.1973); *Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F.Supp. 1048 (N.D.Ga.1986), *appeal pending*, (11th Cir.). In both *Simon* and *Sanders*, however, the alleged misrepresentations were predominately oral. *See Simon*, 482 F.2d at 882 ("courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action"); *Sanders*, 634 F.Supp. at 1060 ("the alleged statements upon which the plaintiffs relied in purchasing [the] securities were primarily oral rather than written ..."). When the alleged misrepresentations are primarily written, however, individual reliance issues do not defeat class certification. *See Eisenberg v. Gagnon*, 766 F.2d 770, 786–87 (3d Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

The named plaintiffs admit that they received certain oral representations concerning the bonds. *See, e.g.*, Deposition of White, pp. 87–91. Virtually every sale of securities involves some oral communication. No significant evidence exists, however, that any oral representations made to the named plaintiffs differed from the written disclosures. Thus, at this stage the court believes that written rather than oral representations will predominate.

Defendants also have suggested an alternative method of resolution allegedly superior to class certification. Defendants propose treating named plaintiffs' claims as "test cases." Under this approach the court would not certify a class but would conduct a trial to establish the existence of any misrepresentations and omissions or a fraud on the market. The remaining bond

purchasers could then file individual suits, seeking to use collateral estoppel.

Aside from the problems inherent in the use of offensive collateral estoppel, the court finds that this procedure is not superior to a class action. Each bond purchaser would still be forced to file a separate lawsuit before recovery. The expense of this abbreviated suit could still exceed the amount of many individual claims.

For the foregoing reasons the court concludes that this case is appropriate for class certification. The court notes, however, that it retains the authority to modify the composition of the class [3] and even to decertify the action altogether. *See e.g., Sears v. Atchison, Topeka & Santa Fe Railway*, 749 F.2d 1451, 1456 (10th Cir. 1984), *cert. denied sub nom.*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985); *Rishcoff v. Commodity Fluctuations Systems, Inc.*, 111 F.R.D. 381, 385 (E.D.Pa. 1986).

### 3. *Negligent Misrepresentation*

In an order filed July 2, 1986, the court dismissed plaintiffs' claim of negligent misrepresentation under Florida law. The court noted that plaintiffs conceded in paragraph three of their .complaint that Georgia had significant contacts with the facts of the case. Thus, the court ruled that Georgia law applied in this case and that Georgia did not recognize the tort of negligent misrepresentation. *See Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 620–21 (11th Cir.1983).

Plaintiffs urge the court to reconsider this ruling in light of *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). *Shutts* concerned a state court's decision to apply Kansas law to a class action involving a nationwide class of plaintiffs. After pointing out the relatively minor contacts Kansas had with the litigation, 105 S.Ct. at 2977, the Su-

preme Court ruled that the application of Kansas law violated due process because Kansas did not have a "significant contact or aggregation of contacts." 105 S.Ct. at 2980.

After further consideration the court concludes that dismissal of the Florida law claim on the basis of a judicial admission was incorrect. The allegations in paragraph three are sufficient to establish venue in this district. They are not sufficient to justify the imposition of Georgia law, however. Paragraph three only states that many of the relevant acts occurred in and had an affect on this district. Thus, the court will consider whether the Florida law of negligent misrepresentation applies under Georgia choice of law principles.

Plaintiffs are pursuing a claim under Florida law, not under the substantive law of any other state. Thus, plaintiffs acknowledge that the negligent misrepresentation claim should be dismissed if Florida law does not apply. *See* Plaintiffs' Supplemental Memorandum on the Issue of Negligent Misrepresentation, December 11, 1986, at 7. Georgia applies the lex loci delicti in tort actions, *see Wardell v. Richmond Screw Anchor Co.*, 133 Ga.App. 378, 210 S.E.2d 854 (1974), and the lex loci contractus in contract cases, *see General Electric Credit Corp. v. Home Indemnity Co.*, 168 Ga.App. 344, 309 S.E.2d 152 (1983). Plaintiffs have not demonstrated how either of these theories justify the application of Florida law. Thus, the court concludes that it is not obligated to apply Florida law.

Even if one of these theories initially pointed toward the application of Florida law, Georgia choice of law principles dictate that only the statutory law of Florida applies. *See Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir.1983). Plaintiffs have not pointed the court to any statute codifying Florida's negligent misrepresentation law. Thus,

---

**3.** At this point the court sees no reason to certify a sub-class of Bishop's Glen bondholders as defendants request. No significant evidence exists that the information disclosed to Bishop's Glen bond purchasers put them on notice of the alleg-

edly fraudulent misstatements and omissions at issue in this litigation. The court will consider a sub-class if defendants provide evidence demonstrating notice of the alleged fraud.

plaintiffs' claim of negligent misrepresentation remains dismissed.

Accordingly, plaintiffs' motion for class certification is GRANTED. The certified class is composed of:

All persons who purchased Polk County Industrial Development Authority First Mortgage Health Care Facilities Revenue Bonds, Series 1982 from the date they were first offered, on or about October 1, 1982, to December 1, 1983, who have sustained damages, with the exception of the named defendants, members of the immediate families of each of the individual defendants, any entity in which any of these defendants has a controlling interest, and the legal representatives, heirs, successors, affiliates or assigns of any of the defendants.

The cross motions for oral argument are DENIED. Plaintiffs' motion to strike is GRANTED. Counsel for the parties are DIRECTED to confer and submit a proposed class notice form within thirty (30) days of the filing of this order.