In re JOINT EASTERN AND SOUTH-
ERN DISTRICT ASBESTOS
LITIGATION.

In re EAGLE–PICHER
INDUSTRIES, INC.

Sarah Jane WHITE, Administratrix of
the estate of Gerald White and Donald
Dellenbaugh and Linda Dellenbaugh,
on behalf of themselves and all others
similarly situated, Plaintiffs,

v.

EAGLE–PICHER INDUSTRIES,
INC., Defendants.

No. NYAL 4000.
Civ. A. No. 90–4253.

United States District Court,
E.D. and S.D. New York.

Dec. 21, 1990.

Greenfield, Eisenberg, Stein & Senior, New York City by Norman A. Senior, Baron & Budd, Dallas, Tex. by Fredrick Baron and Brent Rosenthal, for movants.

Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio by Stanley M. Chesley, Janey Abaray, and Fay Stilz, Dickstein, Shapiro & Morin, Washington, D.C. by David I. Shapiro, Angelo V. Arcadipane and Walter J. Walvick, for respondents.

## MEMORANDUM AND ORDER DENYING DISQUALIFICATION OF STANLEY M. CHESLEY AND DAVID I. SHAPIRO

WEINSTEIN, District Judge:

Motions have been made 1) for the disqualification of David I. Shapiro, counsel appointed for future claimants, persons who have not yet but will in the future assert asbestos-related personal injury or wrongful death claims against Eagle–Picher Industries, Inc. ("Eagle–Picher") and 2) for the disqualification of Stanley M. Chesley as representative counsel on behalf of a putative class of persons who presently assert claims against Eagle–Picher for asbestos-related injuries. The moving parties are distinguished lawyers with many clients claiming asbestos-related injuries. For the reasons set forth below, both motions for disqualification must be denied.

### I. FACTS

#### A. Procedural History

On July 23, 1990, Eagle–Picher moved for certification pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure of a mandatory class of persons who have or will claim injury resulting from exposure to its asbestos-containing products. The court appointed the Honorable Marvin E. Frankel as Special Master to determine whether the financial assets of Eagle–Picher constituted a "limited fund" such that there is a substantial risk that payment of present and prospective asbestos-related claimants will be placed in jeopardy and the claims of earlier litigants will exhaust the defendant's available and projected assets. Order *In re Joint Eastern and Southern Districts Asbestos Litigation*, NYAL 4000, *Loper v. Eagle–Picher Industries, Inc.* 87–CV–1384, 1990 WL 126474 (S.D.N.Y. & E.D.N.Y. Aug. 13, 1990).

Special Master Frankel submitted his report on September 7, 1990. He concluded that the evidence was clear and convincing that Eagle–Picher's assets "are and will be so limited as to create a substantial risk that payments for present and prospective asbestos-related claims for personal injury and wrongful death will be in jeopardy" and that there is a "substantial probability" that the award of damages to earlier litigants will exhaust the company's available and anticipated assets. Special Master's Report, *In re Joint Eastern and Southern Districts Asbestos Litigation*, NYAL 4000, *Loper v. Eagle–Picher Industries, Inc.*, 87–CV–1384, at 23 (S.D.N.Y. & E.D.N.Y. Sept. 7, 1990).

On October 1, 1990 Peter G. Angelos and David I. Shapiro were appointed as representative counsel on behalf of a putative class of present and future claimants asserting asbestos-related injury as a result of exposure to Eagle–Picher products respectively. Subsequently appointed as additional representative counsel were Stanley M. Chesley and Henry G. Miller, on behalf of the putative class of persons with present claims against Eagle–Picher. A consensual settlement would benefit the ever-increasing numbers of persons who claim injury from Eagle–Picher's asbestos products as well as the company's more than 8,000 employees and other affected persons.

Representative counsel had full authority to pursue the best interests of the class consistent with their independent professional judgment. Each appointed representative counsel has proceeded with skill and dedication.

On December 7, 1990 in response to a request from the court for a report on the progress of settlement negotiations and any recommendations with respect to settlement, a Memorandum of Understanding of Proposed Settlement ("Proposed Settle-

ment") signed by Eagle–Picher, Mr. Chesley, and Mr. Shapiro was submitted to the court. Messrs. Chesley and Shapiro, whose qualifications are attacked in this motion supported the proposed settlement. Messrs. Angelos and Miller, who embraced the position of the moving parties that the proposed settlement was not satisfactory, have not been challenged by a motion to disqualify.

## B. Qualifications of Appointed Counsel

Each of the appointed counsel, like the moving counsel, are able and well known members of the legal community.

### 1. *Stanley Chesley*

Stanley M. Chesley's distinguished career reflects not only his extraordinary capabilities, but also his dedication and integrity. He is the senior partner of a leading Ohio Law firm, Waite, Schneider, Bayless & Chesley. He has played a leading role in advocating on behalf of tort victims in numerous complex civil litigations as lead counsel or part of the managing committee including the MGM Grand Hotel Fire Litigation; the "Bendectin" Products Liability Litigation; the Beverly Hills Supper Club Fire Litigation; the Agent Orange litigation; the Holiday Inn Fire Litigation; the Air Crash Disaster at Gander, Newfoundland; and the Dupont Plaza Fire Litigation. As an Adjunct Professor, Chairman of the Board of Trustees of the University of Cincinnati, well-known lecturer and Member of the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio, as well as in many other communal and professional activities Mr. Chesley has made invaluable contributions outside his private legal practice. He has not had experience representing asbestos litigants.

### 2. *David I. Shapiro*

David I. Shapiro's distinguished and varied legal practice has encompassed significant civil rights, antitrust, and complex civil litigation. He is a senior partner in a national and international law firm, Dickstein, Shapiro & Morin. He has argued important cases successfully before the United States Supreme Court and many other state and federal appellate courts. He has represented some twenty states and governmental entities in major antitrust matters. He was Director of the Loyalty-Security Defense Program of the Association of the Bar of the City of New York. In his publications he has elaborated upon antitrust theories of recovery that he pioneered as lead council in the antibiotics and other national cases, including consumer class, *parens patriae*, and fluid recovery. *See, e.g.,* Shapiro, *Consumer Participation in Antitrust Class Actions,* 41 ABA Antitrust L.J. 257 (1972). Mr. Shapiro has also served as the Court Appointed Examiner in the Eastern Airline Bankruptcy and Special Settlement Master in the Agent Orange litigation. He also is currently or has recently been chief litigation counsel for several major corporations (including AT & T, the Regional Telephone Companies, and the First National Bank of Chicago) and professional associations and labor unions involved as plaintiffs or defendants in private and government antitrust and other complex litigation. In addition, he was, until recently, a member of the Advisory Board of BNA's Antitrust and Trade Regulation Reporter and has been a speaker at many ALI–ABA antitrust seminars. He recently served as Chairman of the ABA's National Institute on "New Techniques for Resolving Complex Litigation."

### 3. *Peter G. Angelos*

Peter G. Angelos's extensive experience as a skilled plaintiffs advocate is demonstrated by his representation of several major unions including the Steelworkers, the Baltimore Building and Construction Trades Council Members, and the Western Maryland Building and Trades, and other trade union locals from the East Coast and Tennessee. He is senior name partner in a major Maryland law firm. His communal activities are extensive. He was a member of the Baltimore City Council and is a trustee of the Loyola College of Maryland. Mr. Angelos has developed significant expertise in the area of asbestos tort litiga-

tion. Currently, he represents about 11,-000 plaintiffs allegedly suffering from asbestos-related injuries.

### 4. *Henry G. Miller*

Henry G. Miller is a distinguished plaintiffs attorney with considerable expertise in complex personal injury, wrongful death, and products liability litigations. He is a name partner in a major Westchester law firm, Clark, Gagliardi & Miller. He has published many articles and two books, *Settlements, Art of Advocacy* (Matthew Bender) and *Negligence, N.Y. Practice Guide* (Matthew Bender). Mr. Miller has lectured and taught widely at many law schools and bar programs and has often appeared on television law-related programs. He is an Adjunct Professor at St. Johns law school. Among his many communal activities he has served as a Trustee of Pace University and Director of the Westchester County Legal Aid Society and President of the New York State and Westchester County Bar Associations. In addition, he has served in many influential capacities on national, state and local Bar Associations. He served as a Member of the American Bar Association Tort Commission among other professional associations. He has not had experience representing asbestos litigants.

### C. Basis for the Claims of Conflict

### 1. *Stanley M. Chesley*

The alleged conflict of interest warranting disqualification of Mr. Chesley arises from his law firm's prior representation of Owens–Illinois, Inc., a former manufacturer of asbestos-containing products and potential codefendant with Eagle–Picher in asbestos cases; the law firm's representation of "various business concerns who may be trade creditors of Eagle–Picher"; and Mr. Chesley's asserted lack of experience representing asbestos claimants. The movants assert that Waite, Schneider, Bayless & Chesley's previous representation of Owens–Illinois creates a conflict of interest because Owens–Illinois may have to compete with asbestos health claimants for Eagle–Picher's limited funds to satisfy their contribution and third-party claims.

Mr. Chesley's firm's representation of Owens–Illinois concluded in 1972 and never involved any subject matter related to asbestos. All of the firm's representation involved matters pertaining to the production of Owens–Illinois glass products. Mr. Chesley never acted as counsel on behalf of Owens–Illinois, and the member of the firm who did has since died.

### 2. *David I. Shapiro*

Movants assert that the involvement of Mr. Shapiro and his firm, Dickstein, Shapiro & Morin, in asbestos-related cases, including representation of plaintiffs with present claims against Eagle–Picher renders him an inadequate representative of future claimants. They contend that such dual representation of present and future claimants creates an irreconcilable conflict of interest that warrants his disqualification in view of the claimants competition for Eagle–Picher's admittedly limited funds.

While his firm has represented plaintiffs in asbestos litigation against Eagle–Picher in the past, upon his appointment by this court the firm informed its co-counsel for present claimants against Eagle–Picher that Dickstein, Shapiro & Morin waived its right to collect any fees in those cases. Shortly thereafter, Mr. Shapiro informed every client who has a claim against Eagle–Picher that co-counsel would handle their representation and any portion of the fee attributable to previous work should be disbursed directly to the client at the conclusion of the case.

## II. LEGAL STANDARDS GOVERNING DISQUALIFICATION

Canon 5 of the Code of Ethics and Disciplinary Rule 5–105 of the Lawyer's Code of Professional Responsibility both prohibit an attorney from accepting or continuing employment on behalf of a client when such representation will cause a conflict of interest that may compromise the attorney's professional judgment. "A lawyer should exercise independent professional judg-

ment on behalf of a client." Canon 5 of the Code of Ethics. Canon 9 states, "A lawyer shall avoid even the appearance of professional impropriety." Disciplinary Rule 5–105 of the ABA Code of Professional Responsibility instructs:

> A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests.

These provisions set the standards with regard to conflicts of interest to which members of the profession must adhere. *See NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976) (Code accepted by state and federal courts as providing appropriate guidelines for professional conduct). *See also* New York Rules of Professional Responsibility DR 5–105(B) (effective September 1, 1990) ("a lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or it would be likely to involve him in representing differing interests," except to the extent that all clients explicitly consent to the representation); New York Rules of Professional Responsibility DR 9–101 ("Avoiding Even the Appearance of Impropriety").

The underlying principles protected by the disciplinary provisions are elaborated upon in the relevant ethical considerations:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests may be conflicting, inconsistent, diverse, or otherwise discordant.

ABA Code of Professional Responsibility EC 5–14; *see also* Ethical Considerations 5–15, 5–16.

■ "A high standard of proof on the part of one who seeks to disqualify" counsel is required. *Government of India v. Cook Indus.*, 569 F.2d 737, 739 (2d Cir. 1978). Clear demonstration of a conflict is necessary because "disqualification motions are often interposed for tactical reasons ... Even when made in the best of faith, such motions inevitably cause delay." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791–92 (2d Cir.1983). Accordingly, a moving party "bears a heavy burden of proving facts required for disqualification,". *Id.* at 794. Unless an attorney's conduct tends to taint the judicial process, the court will not disqualify counsel. *Bottaro v. Hatton Assocs.*, 680 F.2d 895, 896–97 (2d Cir.1982); *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979).

■ With rare exceptions, disqualifications is only appropriate

> where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the Court's confidence in the vigor of the attorney's representation of his client ... or more commonly ... where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violations of Canons 4 and 9, thus giving his present client an unfair advantage.

*Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). The "mere appearance of impropriety without any evidence that the trial will be tainted 'is simply too slender a reed on which to rest a disqualification order.'" *Fisons Corp. v. Atochem North America*, 1990 U.S.Dist. LEXIS 15284, 1990 WL 180551 (S.D.N.Y. 1990) (quoting *Nyquist*, 590 F.2d at 1247).

■ Two hypothetical situations relevant to the present litigation might warrant disqualification, but neither is supported by the facts of the instant case. The first is as follows: if the moving party is a former client of the adverse party's counsel; there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and the attor-

ney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *See Cheng v. GAF Corp.*, 631 F.2d 1052, 1055–56 (2d Cir.1980), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Emle Industries v. Patentex, Inc.*, 478 F.2d 562, 570–71 (2d Cir.1973). The second involves concurrent representation that breaches Canon 5 because an attorney represents a party in one matter and simultaneously represents the opposing party in an unrelated case. *See* Model Code of Professional Responsibility Canon 5 (1970) ("a lawyer should exercise independent professional judgment on behalf of a client"). Such dual responsibilities might dilute the attorney's vigorous prosecution on behalf of one of the clients. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233–34 (2d Cir.1977); *Cinema 5 Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976).

■ The class action context provides special problems in at least two respects. First, counsel has a greater responsibility to absent class members who may have less opportunity to influence litigation strategy or participate in the proceedings. This heightened concern is reinforced by the prerequisite imposed by Rule 23(a)(4) that the court examine and assess the adequacy of class counsel. *See* Fed.R.Civ.P. 23(a)(4). Rule 23 cautions against permitting potential conflicts of interest and demands unassailable loyalty and vigorous prosecution on behalf of the class. The court must be sensitive to the responsibility of class counsel to absent members, in particular when representing future interests, and will not countenance even the appearance of divided loyalties. *See Tedesco v. Mishkin*, 689 F.Supp. 1327, 1340 (S.D.N.Y. 1988).

Second, and somewhat at odds with the first factor, the potential for conflicts in the course of representing numerous class members is greatly enhanced. The Second Circuit has cautioned

> that the traditional rules that have been developed in the course of attorneys' representation of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation.... Rather, there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute.

*In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 19 (2d Cir.1986).

### III. APPLICATION OF LAW TO FACTS

#### A. Stanley Chesley

■ There is no question that prior representation of an adversary in a current matter might give rise to a conflict of interest, especially where the prior representation would enable counsel to disclose confidences. *E.g.,* ABA Code of Professional Responsibility EC 7–1, 4–1, 5–2; *In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 17 (2d Cir.1986). While facts known to one member of a law firm are deemed to be known by all, *see* Disciplinary Rule 5–105(D), there is no basis upon which to conclude that the former member of Mr. Chesley's firm who represented Owens–Illinois in an unrelated matter had any privileged information concerning asbestos since his work related to the company's glass products. If he had confidential information, it almost certainly is not relevant more than eighteen years later. Furthermore, even if the former partner had such confidential information, it is almost certain that he would have had no occasion to discuss its content with Mr. Chesley. Mr. Chesley, who was not then a partner of the firm, denies any such discussion and his denial must be credited under the present circumstances.

In evaluating an asserted conflict, the Second Circuit has focused on the relationship between the issues in the respective cases and the involvement of the particular attorney sought to be disqualified. *Government of India*, 569 F.2d at 738–39. Unlike the factual circumstances present in *Government of India* in which counsel had

played an active role in representing a former client subsequently sued by the attorney's new client, Mr. Chesley never represented Owens–Illinois. The attenuated link between his firm's representation of Owens–Illinois nearly two decades ago in matters unrelated to asbestos does not present even an appearance of a conflict of interest or impropriety. The contention that Owens–Illinois would derive inappropriate benefit from what is asserted to be the proposed "woefully inadequate settlement" does not constitute a basis for disqualification. *See Government of India,* 569 F.2d at 739–40.

With regard to the representation of unnamed financial institutions and business enterprises which might be trade creditors of Eagle–Picher and hence profit from a global settlement of asbestos claims against Eagle–Picher, the movants have not demonstrated the slightest hint of a conflict between any entities represented by Mr. Chesley or his firm and Eagle–Picher or asbestos claimants. Any hypothetical divergence of interest between business concerns and asbestos claimants does not rise to the level that threatens "the integrity of the adversary process." *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979).

■ The last ground asserted in support of disqualification, that Mr. Chesley lacks asbestos clients does not constitute an adequate basis for the remedy sought. Especially in view of Mr. Chesley's outstanding qualifications and capabilities, class counsel need not have experience in the precise type of litigation presented by the class action and need not obtain approval from a majority of the class members. *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1415–17 (E.D.N.Y.1989), *aff'd on this ground,* 907 F.2d 1295 (2d Cir. 1990).

Lack of experience in asbestos litigation is a "neutral factor" with both positive and negative aspects. Positively, it avoids the conflicts of those attorneys who represent both individuals with serious and non-serious diseases; attorneys who represent older and newer clients with competing interests; and attorneys who have conflicts among the various sources of their cases, such as unions, forwarding attorneys, and the like; and a variety of decisions that may affect fees. As has been pointed out, "[w]ith surprising regularity, the primary opponents of class treatment of mass tort litigation are the plaintiffs lawyers ... the critics' stake [is] obvious." Spencer, *Mass Tort Class Actions: Going, Going Gone?,* 98 F.R.D. 323, 329–330 (1983). Negatively, it takes time, but not an excessive period, to learn and understand the dynamics of asbestos litigation. For a person with Mr. Chesley's wide experience in many related fields, this learning period should present no problem. It is the hallmark of a good lawyer to step into a new area and quickly grasp its essentials for purposes of a litigation.

## B.   David I. Shapiro

■ The alleged conflict created by representing present and future clients with claims against Eagle–Picher differs somewhat from the typical charge of conflict of interest. *See* Model Code of Professional Responsibility DR 5–105 (1970); *Fisons Corp. v. Atochem North America, Inc.,* 1990 WL 180551, 1990 U.S.Dist. LEXIS 15284 (S.D.N.Y.1990) (counsel representing adversaries in unrelated matters); *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 233–34 (2d Cir.1977) (same). There is no doubt that such claimants are not adversaries within the traditional notion of the legal system, yet they may seek competing results at least with respect to the allocation of resources between current and future claimants. Such competition for funds might taint litigation strategy or negotiations.

Courts that have analyzed whether parallel representation in contexts similar to the ones at issue constitutes a conflict of interest have reached varying conclusions. *Compare Jackshaw Pontiac v. Cleveland Press Publishing Co.,* 102 F.R.D. 183 (N.D. Ohio 1984) ("counsel cannot represent different plaintiffs with conflicting claims against the same defendants"); *Sullivan v. Chase Investment Services,* 79 F.R.D. 246,

258 (N.D.Ca.1978) ("Because this putative class and [another pending class action] have conflicting interests in the course of each litigation, counsel cannot represent both."); *with Sheftelman v. Jones,* 667 F.Supp. 859, 865 (N.D.Ga.1987) (alleged conflicts illusory and potential conflicts too speculative to warrant disqualification); *Anderson v. Bank of the South,* 118 F.R.D. 136, 149 (M.D.Fla.1987) (conflict speculative and other procedural safeguards ensure adequate class representation).

All the cases noted above and relied upon by the parties involved counsel that continued concurrent representation on behalf of classes of plaintiffs potentially competing for funds from defendants with limited resources. The general rule is that the time that a complaint is filed determines whether the acceptance of proffered employment generated a conflict of interest. *See, e.g., Fisons Corp. v. Atochem North America, Inc.,* 1990 WL 180551, 1990 U.S.Dist. LEXIS 15284 (S.D.N.Y.1990); *United Sewerage Agency v. Jelco, Inc.,* 646 F.2d 1339, 1345 n. 4 (9th Cir.1981). The relevant date under the circumstances of this case would be when the court appointed Mr. Shapiro, October 1, 1990. That is the date that his firm notified co-counsel of Mr. Shapiro's intention to represent future claimants and therefore discontinue its participation in pending cases in which claimants had sued Eagle–Picher.

Recognizing the wisdom of avoiding even an appearance of impropriety protected by the holding in *Jackshaw Pontiac,* this court finds that the absence of concurrent representation of present and future claimants by Mr. Shapiro or his firm obviates the need to reach the issue of whether such dual commitments would merit disqualification as a result of the limited financial resources of Eagle–Picher.

To the extent that rules governing conflicts of interest seek to protect client confidences, such a risk does not pose a concern under these circumstances. *See* DR 5–108(A)(2) ("Except with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not: . . . Use any confidences or secrets of the former client"). Eagle–Picher would remain Mr. Shapiro's adversary both in his capacity as counsel for present and for future claimants. Mr. Shapiro has no greater interest in imparting confidences to his adversary counsel now than he did when he represented his prior clients. Moreover, any "secrets" concerning specific former clients are not useful in his representation of future claimants. All relevant information as to reasonableness of the settlement will be revealed in the course of negotiations and required public hearings. Thus, there is no reason to suspect that the future claimants have derived an unfair advantage through access to privileged information.

In addition, there is no evidence that Mr. Shapiro's representation has been anything less than vigilant; nor have the movants demonstrated that Mr. Shapiro has lingering loyalty to his former clients and seeks to further their interests at the expense of the future claimants. No evidence suggests that disqualification is necessary to "preserve the integrity of the adversary process." *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979).

In any event, reliance upon *Sullivan v. Chase Investment Services* does not dictate disqualification under these circumstances. In that case, the appearance of divided loyalties emanated from the simultaneous representation on behalf of classes with potentially competing strategies in view of the defendants' constrained financial condition. *Id.* at 258. The court offered the attorney the choice of continuing as representative counsel in one or the other class litigations. Mr. Shapiro has made that choice in deciding to represent future claimants. Mr. Shapiro's firm took such steps as this court deems necessary to avoid "foreseeable prejudice to the rights of [their] client[s]" as required by DR 2–110(A)(2). Mr. Shapiro's firm's previous representation of asbestos plaintiffs with claims against Eagle–Picher does not justify his disqualification.

## IV. CONCLUSION

There is no basis for disqualification. Appointed counsel possess the requisite skill, ability, and experience to vigorously prosecute on behalf of the class as well as the highest moral qualifications.

The motions for disqualification are denied.

So ordered.